ZIMMERMAN et al. v. VILLAGE OF
LONDON, OHIO, et al.

Civ. No. 321.

District Court, S. D. Ohio, E. D.
April 25, 1941.

Victor F. Schmidt, of Middletown, Ohio, for plaintiff.

D. Harland Jackman, of London, Ohio, for defendants Village of London, Mayor of London, and Marshal of London.

J. Robert Tanner, of London, Ohio, for Sheriff of Madison County.

UNDERWOOD, District Judge.

This is an action brought by George H. Zimmerman and others on behalf of themselves individually and for the use and benefit of all Jehovah's Witnesses who operate and who desire to continue to operate in the Village of London, Ohio.

The suit is brought against the Village of London, Ohio; and E. P. Speasmaker, individually and as Mayor; James Kaveney, individually and as Village Marshal; and Gorman Clark, individually and as Sheriff of Madison County, Ohio, however, Gorman Clark has since been dismissed as a defendant. The petition prays for an interlocutory or preliminary injunction; and upon final hearing, for an order declaring Ordinance No. 767 of the Village of London void, a permanent injunction enjoining the defendants from enforcing said ordinance, and for other equitable relief. It being the theory of the plaintiffs that the ordinance in question is void and unconstitutional in that "it violates the privileges of free speech, free press, freedom of worship and freedom of assembly," guaranteed

by the Fourteenth Amendment to the Constitution of the United States.

The plaintiffs allege that the provisions of said ordinance have been enforced against them and that while distributing printed matter from door to door on January 12, 1941, in the Village of London, members of the group were arrested, charged with violating said ordinance, brought before the Mayor and fined and some of them were incarcerated for several hours. These allegations are admitted and the matter is now before the Court for final determination upon its merits. No testimony has been taken, but by agreement, the case has been submitted upon the pleadings and the final stipulation signed by the parties. The essential question for determination is whether or not the enforcement of Ordinance No. 767 of London, Ohio, as enforced against these plaintiffs for the acts done, denied or infringed their constitutional rights.

It has been stipulated that said ordinance reads as follows:

"Ordinance Number 767

"Provided for the Declaration of a Nuisance.

"Be it ordained by the Council of the Village of London, Ohio

"Section 1. The practice of going in and upon private residences in the Village of London, Ohio, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or the purpose of disposing of and/or peddling or hawking the same, is hereby declared to be a nuisance and punishable as such nuisance as a misdemeaner.

"Section 2. The Village Marshal and Police Force of the Village of London, Ohio, are hereby required and directed to suppress the same, and to abate any such nuisance as is described in the first section of the ordinance.

"Section 3. Any person convicted of perpetrating a nuisance as described and prohibited in the first section of this ordinance upon conviction thereof shall be fined in a sum not less than $10.00 or more than $50.00, together with costs of proceedings."

The foregoing constitutes the material part of the ordinance which is of the type commonly known as "The Green River Ordinance."

It is stipulated that the affidavits charging violation of the ordinance and upon which the plaintiff George H. Zimmerman and others were arrested, charged that they "went upon the premises of private residences, uninvited, for the purpose of vending and/or disposing of merchandise, to-wit: literature, contrary to Village Ordinance No. 767."

Therefore, there is no question but that the arrests were made for distributing printed material upon private property without invitation of the owner or occupant. It is therefore the duty of this Court to determine whether or not a restriction of this character can be imposed without violating the provisions of the Federal Constitution.

The Fourteenth Amendment, Section 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It has been repeatedly held by the Supreme Court of the United States that freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by the Congress, are among the fundamental personal rights and liberties protected by the Fourteenth Amendment from invasion by state action. Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138; Stromberg v. California, 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117, 73 A.L.R. 1484; Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357; Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660; De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278; and Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288. Equally well established is the principle that liberty of the press is not confined to newspapers and periodicals; that it necessarily embraces pamphlets and leaflets.

584

In Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155, the Supreme Court stated in its opinion: "As said in Lovell v. City of Griffin, supra, pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people. On this method of communication the ordinance imposes censorship, abuse of which engendered the struggle in England which eventuated in the establishment of the doctrine of the freedom of the press embodied in our Constitution. To require a censorship through license which makes impossible the free and unhampered distribution of pamphlets strikes at the very heart of the constitutional guarantees." 308 U.S. page 164, 60 S.Ct. page 152, 84 L.Ed. 155.

In the case now before this Court, the ordinance imposes no censorship upon the "free and unhampered distribution of pamphlets"; it imposes what amounts to a virtual prohibition upon such distribution, and this is stated understandingly, in view of the charges filed by the authorities against these plaintiffs. Certainly there is no prospect under the ordinance for the "free and unhampered distribution of pamphlets" as envisaged by the Supreme Court. It may be added that freedom of the press contemplates not only the right to print, but also, the right to distribute.

It follows, therefore, that the restriction of the ordinance as enforced against these plaintiffs amounts to a denial of freedom of the press and of the right of free speech, rights guaranteed by the Constitution and protected against state infringement by the Fourteenth Amendment. Although the theory of the ordinance is purportedly trespass, the theory can give no sanction to the denial of fundamental rights under the Constitution.

Democracy rests upon the theory that all men are possessed of certain inalienable rights; these rights, if democracy is to survive, must be based upon mutual tolerance and understanding. They give to no class or group the right to dictate to another what his opinions or belief shall be. The right to entertain and express views does not carry with it the right to force personal views upon others and vociferous minorities may be as guilty of this unconstitutional and undemocratic usurpation of fundamental rights as organized government, and perhaps such conduct on the part of groups and individuals is the more reprehensible because it cannot be as effectively dealt with as the same sort of action on the part of governmental authority. Nevertheless, the Constitution gives to all men equal rights and equal protection of the law and it has not yet required that those who seek its protection should in turn give to it their protection; that moral obligation rests with the conscience of the individuals and from the degree of fulfillment of the obligation we may judge the truth of pretensions made.

It is the conclusion of this Court that the plaintiffs have a constitutional right to distribute their literature from door to door in an orderly manner, without interference by state authority, there being neither allegation nor showing that such literature is against public morals or in any way improper for distribution.

It is the further conclusion of the Court that this suit was properly brought under Title 28, Section 41, Subsection (14), U.S.C.A., which gives this Court jurisdiction: "Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

The Court, however, declines to hold the ordinance in question void upon its face. The question has been tried only upon the application of the ordinance to these plaintiffs and to those similarly situated engaged in house to house distribution of printed matter and of oral and written opinion. As so applied, the Court finds said ordinance unconstitutional to the extent that it interferes with such constitutional rights of the plaintiffs and those similarly situated and engaged, and a permanent injunction will issue to restrain the defendants from so enforcing said ordinance.

In conclusion, the Court will say that a complaint drawn in the ordinary terms of legal usage would much better serve the purpose of the Court and the litigants than one filled with redundant, useless, scandalous and impertinent matter. Name calling, as such, has neither place nor pro-

priety in a complaint filed in Federal Court and this is particularly true where the offense is against those not parties to the action and where it is entirely unjustified by the issues of the case.

Entry accordingly.