Ex parte W. L. WINNETT et al.

No. A-9900.   Jan. 7, 1942.
(121 P. 2d 312.)

Kenneth Kienzle, of Shawnee, for petitioners.

Randall Pitman, City Atty., of Shawnee, for respondent.

DOYLE, J. Petitioners by this proceeding seek to secure their discharge from the custody of the chief of police of the city of Shawnee.

In their petition for the writ issued herein it is alleged that they were each by complaint filed in municipal court charged as follows:

"Did unlawfully commit the offense of circulating literature on the streets of the City of Shawnee, Okla., against the peace and dignity of the City of Shawnee, and against the ordinance of said City in such case made and provided."

And upon their trial they were each found guilty, punishment assessed by fine and cost; in default of payment to be committed to the city jail.

It is alleged in their petition:

"That said restraint is illegal in that it violates the constitutional rights of these petitioners and is in violation of the First and Fourteenth Amendments to the Federal Constitution by abridging the freedom of the press and prohibiting the distributing of the literature about the plaintiffs' religion; that said restraint is illegal in that the municipal judge or court of the City of Shaw-

nee does not have any jurisdiction over the subject matter of the charge contained in the complaints against these petitioners, and does not have any jurisdiction over the persons of these petitioners.

"Wherefore your petitioners pray Your Honorable court to grant a writ of habeas corpus and that they be discharged without delay from said unlawful imprisonment."

Upon the return day the case was orally argued and time given to file briefs. The petitioners were released on their own recognizance pending the determination of the case.

The ordinance in question prohibited the distribution of literature of any kind at any time on the streets of the city of Shawnee.

Respondent in his answer states that each petitioner was charged in the municipal court, M. M. Chapman, judge, by complaint as set forth in their petition; that on the 28th day of June, 1940, all of said defendants present in municipal court and being represented by Kenneth Kienzle, the city being represented by Randall Pitman, city attorney, and upon their trial said defendants were found guilty of the offense of circulating seditious literature in the city of Shawnee, and were each sentenced to pay a fine of $7.50 and costs.

Counsel for respondent in his brief states:

"These petitioners are members of a religious sect, known as 'Jehovah's Witnesses', and have as part of their belief that no person should salute the flag of the United States of America, or pledge allegiance to that flag or to that country. They also entertain the belief from what is commonly called 'conscientious objectors,' that is their religion does not permit them to go to war for their country. Literature containing these doctrines was being circulated by the petitioners, and the municipal judge,

after a regularly conducted trial, found them guilty of circulating seditious literature, and assessed a fine against them. At the conclusion of the trial they gave notice of their intention to appeal to the district court of Pottawatomie county, and were granted ten days in which to make an appeal bond. They neglected and failed to make this bond and were again taken into custody on the 13th day of July, and were held in custody until ordered released by this court."

Counsel for petitioners in reply says:

"The complaint did not say what kind of literature, we must therefore suppose that it meant any and all kind of literature. Such a charge is void upon its face and deprives the petitioners of their constitutional rights and violates the constitutional guaranty of freedom of speech and freedom of the press, and freedom of religious worship." Citing the case of Lovell v. City of Griffin, 303 U. S. 444, 58 S. Ct. 666, 82 L. Ed. 949.

The Fourteenth Amendment provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It has been repeatedly held by the Supreme Court of the United States that freedom of speech and freedom of the press which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties protected by the Fourteenth Amendment from invasion by state action, and municipal ordinances adopted under state authority, constitute state action and are within the prohibition of the Fourteenth Amendment, and that the constitutional guaranty of freedom of the press embraces distribution as well as publication. Lovell v. City of Griffin, supra; Palko

v. Connecticut, 302 U. S. 319, 58 S. Ct. 149, 82 L. Ed. 288; Schneider v. State of New Jersey, 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155; Stromberg v. People of California, 283 U. S. 359, 51 S. Ct. 532, 75 L. Ed. 1117, 73 A.L.R. 1484.

See, also, Zimmerman v. Village of London, Ohio, D. C., 38 F. Supp. 582.

The questions of law and fact in this case are almost identical with the questions involved in the case of Ex parte Walrod, 73 Okla. Cr. 299, 120 P. 2d 783, decided by this court in opinion filed December 23, 1941.

It follows that the ordinance in question is unconstitutional and void, and as enforced against petitioners amounts to a denial of freedom of speech and freedom of the press and freedom of religious rights guaranteed by the Constitution and protected against state infringement by the Fourteenth Amendment to the Constitution of the United States.

In the case of Zimmerman v. Village of London, Ohio, supra, [38 F. Supp. 584], at the conclusion of the opinion written by Judge Underwood, it is said:

"Democracy rests upon the theory that all men are possessed of certain inalienable rights; these rights, if democracy is to survive, must be based upon mutual tolerance and understanding. They give to no class or group the right to dictate to another what his opinions or belief shall be. The right to entertain and express views does not carry with it the right to force personal views upon others and vociferous minorities may be as guilty of this unconstitutional and undemocratic usurpation of fundamental rights as organized government, and perhaps such conduct on the part of groups and individuals is the more reprehensible because it cannot be as effectively dealt with as the same sort of action on the part of governmental authority. Nevertheless, the Constitution gives to all men equal rights and equal protection of the law and it has not yet required that those who seek its pro-

tection should in turn give to it their protection; that moral obligation rests with the conscience of the individuals and from the degree of fulfillment of the obligation we may judge the truth of pretensions made.

"It is the conclusion of this court that the plaintiffs have a constitutional right to distribute their literature from door to door in an orderly manner, without interference by state authority, there being neither allegation nor showing that such literature is against public morals or in any way improper for distribution."

From all the foregoing considerations we necessarily conclude that petitioners' prosecution and conviction in the municipal court of the city of Shawnee, and all the proceedings had in connection therewith, were null and void.

It follows that petitioners were restrained of their liberty and held in custody without due process of law. They are therefore by the judgment of this court discharged from the imprisonment of which they complain as prayed in their petition.

BAREFOOT, P. J., and JONES, J., concur.