## PEOPLES RAPID TRANSIT COMPANY ET AL., PROSECUTORS, v. ATLANTIC CITY, RESPONDENT.

Argued May 3, 1928—Decided February 4, 1929.

287

Before Justices MINTURN, BLACK and CAMPBELL.

For the prosecutors, *Cole & Cole* and *S. Paul Ridgway.*

For the respondent, *Joseph B. Perskie.*

The opinion of the court was delivered by

MINTURN, J. The facts in the case brought up by this writ are as follows:

Atlantic avenue, in the city of Atlantic City, is one of the main thoroughfares, if not the main thoroughfare, of that municipality, and extends the full length of the city. Pacific avenue parallels Atlantic avenue from Main to Albany avenues; and Oriental avenue extends from the boardwalk to New Jersey avenue, parallel with Atlantic avenue. The main thoroughfare running parallel with Atlantic avenue, along the ocean front of the city, is Pacific avenue.

The distance between Atlantic avenue and the boardwalk is between seven hundred and fifty and eight hundred feet, and that avenue is a street about eighty feet in width, Pacific avenue being about thirty-five feet in width.

All the streets in the city leading to the boardwalk are what are known as dead-end streets. There are forty-eight streets running across Atlantic avenue from Main to Jackson avenue, and the inhibition contained in the ordinance covers all streets so crossing Atlantic avenue, with the exception of Main and New Hampshire avenues.

During the summer and holiday seasons as many as fifteen thousand additional automobiles use the streets.

On Virginia avenue two of the prosecutors operate. There is a double trolley track on the street, extending its full length, upon which track is operated trolley cars.

Three of the prosecutors in this case own approximately one hunded of the buses, which carry about thirty thousand passengers, and are about eight feet wide, twenty-nine feet long, and weigh approximately sixteen thousand pounds.

Under these conditions the board of commissioners of the city of Atlantic City passed an ordinance, which was approved on the 9th of February, 1928, entitled "An ordinance regulating the operation of auto buses within the city of Atlantic City, providing for operating terminals, and the parking of said auto buses, regulating and prohibiting the use of certain streets in said city by said auto buses, and providing penalties for the violation thereof."

Section 1 of the ordinance provides that the term or designation "auto buses," as used in the ordinance, is declared to mean and include one or more automobiles, or one or more other vehicles propelled by motor power, with a seating capacity of more than seven passengers, and engaged in carrying passengers for hire and pay, to and from and within the city of Atlantic City.

The second section provides that nothing contained in the ordinance should be construed to include taxicabs, hotel buses or buses employed solely in transporting school children and school teachers to and from the public schools in said city, or such omnibus and stage coaches and other vehicles commonly called jitneys, as operate solely within the limits of said city, or auto buses operated wholly within the city limits of the city by virtue of a franchise from said city.

Section 3 provides that it shall be unlawful for any person operating auto buses as therein defined to receive or discharge passengers on any street or highway in the city.

The fourth section provides that it shall be unlawful for any person to park or operate any auto bus as therein defined in the city of Atlantic City, unless such person shall first procure, provide and maintain a terminal, on private land, on which terminal only such person shall park, or shall accept

and discharge any person or persons who may offer themselves for transportation in such auto buses.

Section 3 provides that it shall be unlawful for any auto bus as therein defined, to operate on or across Atlantic avenue, or to operate on any streets, avenues, boulevards, public places or portions thereof, lying between Atlantic avenue and the boardwalk, and between Vermont and Jackson avenues.

Section 6 provides that it shall be unlawful to operate at any time within the said city any auto bus, as therein defined, carrying passengers in excess of the rated seating capacity of the bus.

Section 7 provides that the word "person" is thereby declared to mean and include persons, firms, associations, co-partnerships and corporations, and the employes, agents and servants of such persons, firms, associations or co-partnerships and the officers, employes, agents and servants of such corporations.

Section 8 provides that the ordinance is declared to be necessary in the interest of the public safety and health of the community and to relieve congestion of traffic on Atlantic avenue, and on streets lying between Atlantic avenue and the boardwalk, and between Vermont and Jackson avenues, to lessen the fire hazard occasioned by the obstruction due to auto buses on said avenue and said streets, and to provide for certain necessary police regulation of such buses.

Section 9 provides that any person, firm, association, co-partnership or corporation violating any of the provisions of the ordinance shall, upon conviction thereof, pay a fine not exceeding $50 for the first offense, and a fine not exceeding $100 for each and every offense thereafter, and upon default in payment of any first or subsequent fine therein provided, such offender shall be imprisoned in the city or county jail for a period not exceeding thirty days.

Section 10 provides that if for any reason any section or part of any section, or any provision of this ordinance shall be questioned in any court, and shall be held by any court to be unconstitutional or invalid, the same shall not be held

to affect any other section or any part of any other section or provisions of the ordinance.

By section 11 all ordinances or parts of ordinances inconsistent therewith are thereby repealed to the extent of such inconsistency.

The twelfth section provides for the immediate taking effect of the ordinance.

There are four prosecutors to the writ, who seek the judgment of the court touching the validity of the ordinance under review, in so far as it provides for operating terminals, and the parking of auto buses, and regulating and prohibiting the use of certain streets in said city by said auto buses, and providing penalties for the violation thereof.

The prosecutors are engaged in interstate commerce, transporting passengers to and from Atlantic City, and to and from points outside of the State of New Jersey. Each has a terminal in Atlantic City, and none of them takes on passengers in New Jersey except at its terminal in Atlantic City, nor does any of them discharge any passenger within the limits of New Jersey, except at its city terminal; and no question is made but that the said prosecutors have paid whatever tax or fee is required by the law of the state or the ordinance of Atlantic City.

The insistence is that the ordinance is prohibitive and not regulatory, that it is unreasonable, and that it unjustly discriminates against the prosecutors, and that it unduly burdens interstate commerce, and denies to the prosecutors the equal protection of the law, and deprives them of their property without due process of law; while the respondent contends that the ordinance is a proper and expedient police regulation in the interest of the welfare, comfort and safety of the inhabitants of the city.

It will be observed that, among other things, the ordinance in question prohibits the operation of auto buses on the streets of a specified congested area of the city, adjacent to the boardwalk; and this is sought to be done in the interest of the welfare, the lives, persons and property of the people of the city and of those who frequent the same.

It is settled in this state that the regulations of motor vehicles on particular streets, even to their complete exclusion therefrom, when deemed necessary in the public interest, is within the police power delegated to municipalities. *West* v. *Asbury Park*, 89 *N. J. L.* 402. And while such regulation may be considered drastic in its operation, the court is not at liberty to substitute its judgment for that of the municipality as to the best methods of relieving traffic congestion in the specified area, in the interest of the welfare of the inhabitants and frequenters of the city. Such a regulation bears a direct relationship to the public safety, and we do not find in this instance, and under the circumstances of this case, that the prescribed municipal action is either unreasonable or arbitrary in its provisions or general tendency, or that it militates against the public policy necessarily conceded to the municipality for the preservation of the general public welfare.

The cases are numerous, both in the United States court and in the state courts, where it has been held as a general principle that in the absence of a federal prohibition or regulation upon the subject, it is competent for the state, by legislative enactment and by delegation to state agencies, to regulate the operation of automobiles in the interest of the general traveling public, as well as to enhance the security of the life, limb and property of those who find it necessary to use the public thoroughfares.

We are not pointed in this instance to any act of federal legislation which deprives the state, or the municipality in this instance, of the right to exercise this power in the general public interest. We therefore are relegated entirely to the question as to whether or not, in the absence of such a federal prohibition or act of regulation, the ordinance in question is reasonable and necessary under the circumstances. The cases upon this subject are numerous and diversified. A reference to them would include chapter 152 of the laws of 1917, known as the Home Rule act, which seems to concede that necessary power to the municipality. Also *Dreyer* v. *Union City*, 4 *N. J. Mis. R.* 835, where a question not un-

like that involved in the present instance was discussed and determined. In that case it was observed: "We are unable to perceive wherein the ordinance is in violation of any statute under which the city is governed, nor do we think the ordinance is an abuse of discretion vested in the council of the city." By the very nature of the business conducted by the prosecutor, the city council must possess a liberal legal discretion in controlling and regulating the business thus operated on the public streets of the city, for the safety and convenience of the traveling public.

Cases to the same general purport are *Bergen Bus Line* v. *The Hackensack Improvement Commission,* 4 *N. J. Mis. R.* 167; *Independent Oil Co.* v. *City of Gloucester,* 102 *N. J. L.* 502, in which latter case it was observed: "The court will not interfere unless it is clearly shown that the ordinance, either upon the face of its provisions or by reason of its operation in the circumstances under which it is to take effect, is unreasonable or oppressive."

Following this general line of legal adjudication it has been settled in the United States Supreme Court that reasonable police regulations by a state or municipality, applicable to interstate motor bus traffic, are valid and will not constitute a direct or undue burden on interstate commerce.

The above legal proposition is supported by such cases as *Buck* v. *Kuykendall,* 267 *U. S.* 307; *Hendricks* v. *Maryland,* 235 *Id.* 610; *Kane* v. *New Jersey,* 242 *Id.* 160; *Clark* v. *Poor,* 274 *Id.* 554; *Morris* v. *Duby,* 274 *Id.* 135, and other cases of a like character, involving similar or cognate questions, such as *Michigan Public Utilities Commission et al.* v. *Duke,* 266 *Id.* 570, wherein it was declared: "This court has held that, in the absence of national legislation governing the subject, a state may rightfully prescribe uniform regulations necessary for publis safety and order, in respect to the operation upon its highways of all motor vehicles, * * * those moving in interstate commerce, as well as others."

In these cases the rule has been specifically declared that it is within the power of the state agency to specify the route over which buses may operate, the number of passengers they

may carry, or the service they may render, if such power be reasonably exercised for the public safety and order, and the general conservation of the highways, and that such regulations are not antagonistic to the provisions of the commerce clause of the federal constitution, and are therefore clearly within the police power of the state.

The ordinance in question, in our judgment, has gone no further than to extend the exercise of the police power to the mere question of regulation, of licensing motor buses, and prescribing their use over certain routes of the city, and restricting their use upon certain other streets of the city, as well as regulating their parking and loading and unloading within the limits of the city, in the interest of the public safety.

If a power of regulation of this character were not to be accorded to the municipality, it would be difficult to apprehend by what *modus operandi* intelligently exercised the public safety could be properly conserved; and, within reasonable limitations in its exercise, such a power has generally been conceded to all municipalities.

The ordinance in question applies to all civil service auto buses within its provisions, whether engaged in the business of interstate, intercity, or intrastate transportation of passengers for hire. Hotel buses are used as an incident of the hotel business, and school buses are a facility in connection with the schools, which serve a vital public interest; whereas the buses included within the terms of the ordinance use the public streets solely and exclusively for commercial gain; and in our judgment these differentiating features of the ordinance form an ample basis for a separate classification.

The depositions taken in the case show that other excepted motor vehicles are already regulated in the public interest as to routes which may be used by them. For the purposes of legislation motor vehicles operating without any definite routes properly form a class distinct from those operating over particular routes; and the ordinance is not objectionable, because it exempts vehicles included under another ordinance by the provisions of which such vehicles are already regulated.

The ordinance substantially therefore is a police regulation of local concern, and devoted entirely to the regulation of public traffic within the boundaries of the municipality, and incidentally only affects interstate commerce.

The fact, as is insisted, that the prosecutors have made a substantial investment in their business, which' might be affected by these local regulations, does not of itself concede to them vested rights which can militate against the power of the municipality to protect, by proper and reasonable regulation, the vested rights of the public in the public thoroughfares. *Staats* v. *Washington,* 45 *N. J. L.* 318, 321. Nor does such a contention come within the reason of the due process of law clause of the federal constitution, as against the public right to exercise the police power within reasonable regulations and limitations. *Pennjersey Rapid Transit Co.* v. *Camden,* 6 *N. J. Mis. R.* 618; 142 *Atl. Rep.* 821; *Welsh* v. *Morristown,* 98 *N. J. L.* 630.

We have therefore reached the conclusion that there is no discriminatory classification of motor buses in the ordinance brought up for review, which would in anywise be violative of the provisions either of the state or federal constitution, and that the said ordinance in all its provisions is a reasonable exercise of the police power, and should be affirmed.