## Ex parte DUNCAN.

No. 27533. March 9, 1937.

356

T. G. Chambers and James R. Eagleton, for petitioner.

Harlan Deupree, Municipal Councellor, A. P. Van Meter, Ass't. Municipal Counselor, and Jarman & Brown, for respondents.

HURST, J. The question to be determined in this case is the validity of the Oklahoma City parking meter ordinances. H. E. Duncan was convicted and fined for parking on West Main street in Oklahoma City in a meter parking space without depositing a nickel in the meter. He was committed to the city jail and applied to the district court of Oklahoma county for a writ of habeas corpus. The writ was denied and he again was committed to the city jail. Thereafter he applied to this court for a writ of habeas corpus.

The crime charged was the violation of ordinances Nos. 4624 and 4706, which created what is known as parking meter zones designated by lines marked upon the streets. The ordinances provided for the purchase of parking meters by the city to be placed by each zone, and further provided that no one shall park his automobile in the designated areas without first depositing a 5 cent coin in the meter, after which he shall be entitled to park for the time provided for that particular zone. The ordinances provide a penalty for their violation. The meters are constructed so as to clearly indicate compliance with the ordinance.

Petitioner, in his brief, presents five propositions, in substance contending that the ordinances impose a fee for the free use of the streets, which is a right of all citizens of the state that can only be infringed upon by a proper exercise of police power specifically delegated the municipality by the state. He contends that there has been no delegation of power, and further, that section 10290, O. S. 1931, specifically prohibits the charging of a fee for the exercise of this right. In the alternative he argues that if parking is not an absolute right as an incident to the free use of the highways, it is a privilege which the city cannot permit for the reason that it creates a nuisance.

It is elementary that control over the highways, streets, and alleys within the corporate limits of the municipalities is reserved in the state, and the municipality can exercise only such control as has been delegated by the state. City of Tulsa v. S. W. Bell Telephone Co. (1935) 75 Fed. (2d) 343. But cities have been clothed with full power to control and regulate the streets and alleys therein and may exercise their police power to the attainment of that end. Section 2, art. 18, Okla. Const.; section 3, art. 18, Okla. Const.; section 7, art. 18, Okla. Const.; section 6380, O. S. 1931; section 6397, O. S. 1931; section 6410, O. S. 1931. This power has been specifically given Oklahoma City by its charter. Section 1, art. 1, Charter, Oklahoma City; section 3, art. 1, Charter, Oklahoma City; section 7, art. 1, Charter, Oklahoma City. A limitation of this grant, however, is expressed in section 10290, O. S. 1931, and strongly relied on by petitioner, as follows:

"The local authorities of cities, towns and villages of this state, shall have no power to pass, enforce or maintain any ordinance, rules or regulation requiring from any owner to whom this article is app'icable any tax, fee, license or permit **for the free use of the public highways** or excluding or prohibiting any motor vehicle registered in compliance with this article or the accessories used thereon **from the free use of the public highways** and no ordinance, rule or regu'ation in any way contrary to or inconsistent with the provisions of this article, now in force or hereafter enacted, shall have any force or effect; **provided** that the

powers given to local authorities in cities of the first class to enact general rules and ordinances applicable equally to all vehicles and users of the highways, to bring the orderly passage of vehicles upon certain streets in such cities where the traffic is heavy and continuous, and the powers are given local authorities to regulate vehicles offered to the public for hire or for proceedings, assemblages, or parades in the streets or public places shall remain in full force and effect."

The first question is whether the parking meter ordinances violate the provisions of this express limitation. Upon analysis, the provisions of the statute applicable to the case at bar are that cities shall have no power to pass any ordinance (1) requiring a fee from any owner to whom this article is applicable **for the free use of the public highways,** or (2) excluding any motor vehicle from **the free use of the public highways; provided,** that the powers given to cities to enact general rules (a) to bring the orderly passage of vehicles upon certain streets in such cities where the traffic is heavy and continuous, and (b) to regulate vehicles offered to the public for hire, shall remain in full force and effect. Considering the limitations expressed in clauses (1) and (2), the decisive issue is whether "the free use of the streets" includes the right to "park". The public has the absolute right to the free use of the streets, and this means any use that is incident to the primary purpose for which the streets have been dedicated. The primary purpose is travel. Thus this right has been interpreted to mean only free passage and the right to use the street to convey one's self or property from one place to another. Hover v. Oklahoma City (1928) 133 Okla. 71, 271 P. 162; City of Stillwater v. Lovell (1932) 159 Okla. 214, 15 P. (2d) 12; City of Waco v. Powell (1869) 32 Tex. 258; Greene v. City of San Antonio (1915, Tex. Civ. App.) 178 S. W. 6; 29 Tex. Jur. 606; 13 R. C. L. 251. This, of course, includes the right to stop at the curb for the purpose of taking in or letting out occupants of the car, or for the purpose of loading or unloading merchandise. But a clear distinction is made between this use of the street and "parking", which is held not to be an incident to public travel. Village of Wonewoc v. Taubert (1930, Wis.) 233 N. W. 755, 72 A. L. R. 224; Pugh v. City of Des Moines (1916, Iowa) 156 N. W. 892, L. R. A. 1917F, 345; Blashfield's Cyc. of Automobile Law and Practice, vol. 1, secs. 32, 78. Consequently, many jurisdictions adhere to the view that the city can prohibit parking absolutely, on certain congested streets, but could not prohibit the stopping of automobiles for purposes incident to travel. Pugh v. City of Des Moines, supra; Village of Wonewoc v. Taubert, supra; State v. Carter (1934, N. C.) 172 S. E. 415; Lowell v. Pendleton Auto Co. (1927, Ore.) 261 P. 415; McCaffrey v. Smith (1886, N. Y.) 41 Hun, 117; Welsh v. Town of Morristown (1923, N. J. L. ) 121 Atl. 697; City of Chicago v. McKinley (1931, Ill.) 176 N. E. 261. The same view has been adopted in this state. McGuire v. Wilkerson (1922) 22 Okla. Cr. 36, 209 P. 445.

With this interpretation of the phrase "free use of the highways," we find that to prohibit parking altogether does not violate clause referred to as (2) preventing the city from excluding any motor vehicle from such free use. It follows that parking is not such an absolute right, for which the city is prevented from charging a fee, as provided in clause designated (1). Moreover, considering the proviso, clause (a), recognizing the power of the city to enact ordinances to bring the orderly passage of vehicles upon the streets where traffic is heavy and continuous, must of necessity be interpreted to include parking. Without the right to prohibit or regulate parking, no orderly passage of the vehicles could be accomplished. Therefore, we conclude that the parking meter ordinances do not violate the statute above quoted, inasmuch as they do not affect a right which can be called a free use of the highways. Moreover, the statute contemplates such regulations to be included in the exceptions therein expressed.

We are not dealing with an absolute right which could only be infringed upon by the police power of the state, but rather, with a privilege which may be controlled and regulated by the powers granted to the city to be exercised for the public safety and good order. If the city has the power to regulate parking, it has the power to exact a fee of sufficient amount to cover the expenses of maintaining the regulation. Ex parte Holt (1918) 74 Okla. 226, 178 P. 260; Henkel v. City of Detroit (1882, Mich.) 13 N. W. 611, 43 Am. Rep. 464; City of Buffalo v. Stevenson (1913, N. Y.) 100 N. E. 798. In the New York case the court said:

"The power to regulate the use of the streets is a delegation of the police power of the state government, and whatever reasonably tends to make regulation effective is a proper exercise of that power. It justifies the charge of a fee and the imposition of the penalty, and the regulative measure is

not invalidated because, incidentally, the city's receipts of money are increased."

Thus we meet the decisive question of whether this is a proper exercise of the police power delegated to the city. We cannot consider the wisdom of the ordinance, or that it may work hardship in particular instances. For an otherwise valid ordinance conferring a privilege is not rendered invalid because particular persons find it difficult or impossible to comply with the conditions imposed for its enjoyment. Gant v. Oklahoma City (1933) 289 U. S. 98, 77 L. Ed. 1058. We find nothing to sustain petitioner's argument that the ordinance creates a nuisance, for he is in no wise obstructed in his free use of the streets within the meaning we place upon that right. The ordinances, on their face, appear to be bonâ fide exercise of the police power. We have no evidence before us for consideration, and the record shows nothing to the contrary. There is no contention that the income from the meters is excessive. Under these circumstances, we hold the ordinances to be valid.

To our knowledge, only Florida and Alabama have passed upon the validity of parking meter ordinances. State of Florida ex rel. Harkow v. McCarthy, Chief of Police (Dec. 10, 1936, not yet officially reported) 171 So. 314; City of Birmingham v. Hood-McPherson Realty Co. (Ala. Sup.)- 172 So. 114. The Florida case supports our view. It was a habeas corpus proceeding, and the ordinance in all respects material to the issues herein involved was identical. The court in effect said that it was not dealing with the right to travel, but with the power of the municipality to regulate parking, and the only question was whether the ordinance was a proper exercise of that power. In upholding the validity of the ordinance, the court concluded:

"Undoubtedly a city may not 'make gain under an illegal exercise of the police power,' but it is well settled that a license fee may be of a sufficient amount to include the expense of issuing the license and the cost of necessary inspection or police surveillance connected with the business or calling licensed, and all the incidental expenses that are likely to be imposed upon the public in consequence of the business licensed. The courts will not seek to avoid an ordinance by nice calculations of the expense of enforcing police regulations, but will promptly arrest any clear abuse of the power.' '(Citing authorities.) * * *

"If it had been shown * * * that the streets on which parking meters have been installed under this ordinance are not streets where the traffic is sufficiently heavy to require any parking regulations of this sort, or that the city was making inordinate and unjustified profits by means of the parking meters, and was resorting to their use not for regulatory purposes but for revenue only, there might have been a different judgment.

"In the case of Frost & Frost Trucking Co. v. R. R. Commission of Cal., 271 U. S. 538, 70 L. Ed. 1101, Mr. Justice McReynolds observed that: 'The states are new struggling with new and enormously difficult problems incident to the growth of automotive traffic, and we should carefully refrain from interference unless and until there is some real, direct and material infraction of rights guaranteed by the federal Constitution.' "

These observations are applicable to the case at bar.

In the Alabama case an abutting property owner sought to enjoin the enforcement of the ordinance, on the ground that it deprived him of the right to free ingress and egress for himself, his family, guests, or customers. The question was whether the property rights of the abutting owner were paramount to the right of the city to exercise its police power in this manner. The court held that the property rights prevailed and declared the ordinance invalid. That question is not involved in the case at bar.

The writ is denied.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, WELCH, CORN, and GIBSON, JJ., concur.