# Ex parte E. F. WALROD.

No. 9989. Dec. 23, 1941.
(120 P. 2d 783.)

300

302

304

Springer & Springer, of Stillwater, for petitioner.

Leon J. York, of Stillwater, for respondent.

DOYLE, J. This case originates in this court on application of E. F. Walrod for writ of habeas corpus.

Petitioner alleges that he is unlawfully restrained of his liberty by John Black, chief of police of the city of Stillwater, on a purported commitment issued upon the judgment and sentence of M. J. Bradley, municipal judge and mayor of said city, finding said petitioner guilty of violating section 1, city ordinance No. 611, by distributing advertising and reading matter on the streets, and alleging that said municipal court, or the judge thereof, was wholly without jurisdiction to make and enter the said judgment and sentence imposed and to issue said commitment thereon, because said ordinance violated freedom of the press, his right to free speech, and free exercise of religion as guaranteed to him by the First Amendment to the Constitution of the United States, which ordains that:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

And alleging that petitioner is detained and deprived of his liberty without due process of law as guaranteed to him under the Constitution of the State of Oklahoma and in violation of the Constitution and laws of the United States of America, and particularly the Fourteenth Amendment to the Constitution of the United States, which had the effect of making the said First Amendment applicable to the states, which ordains that:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Citing Lovell v. City of Griffin, 303 U. S. 444, 58 S. Ct. 666, 669, 82 L. Ed. 949.

The Sixth Article of the Constitution of the United States declares:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

"The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."

Section 1 of Article 1 of the State Okla. St. Ann. Constitution declares:

"The State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land."

And section 2, art. 1 of the State Constitution declares:

"Perfect toleration of religious sentiment shall be secured, and no inhabitant of the State shall ever be molested in person or property on account of his or her mode of religious worship; and no religious test shall be required for the exercise of civil or political rights. Polygamous or plural marriages are forever prohibited."

Section 22 of art. 2 of the State Constitution declares:

"Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

Reference is made to section 7 of article 2, which declares:

"No person shall be deprived of life, liberty, or property, without due process of law."

Lovell v. City of Griffin, supra, holds that the free exercise of a person's religion and the practice thereof, and the freedom of speech and freedom of the press which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action, and municipal ordinances adopted under state authority constitute state action and are within the prohibition of the Fourteenth Amendment, and that the constitutional guaranty of freedom of the press embraces distribution as well as publication. Mr. Chief Justice Hughes, delivering the opinion of the court, said:

"The ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation 'either by hand or otherwise.' There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the city manager.

"We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing.' And the liberty of the press became initially a right to publish 'without a license what formerly could be published only with one.' While this freedom from previous restraint upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the constitutional provision. * * *

"The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest. The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion. What we have had recent occasion to say with respect to the vital importance of protecting this essential liberty from every sort of infringement need not be repeated. Near v. Minnesota [283 U. S. 697, 51 S. Ct. 625, 75 L Ed. 1357] supra; Grosjean v. American Press Co. [297 U. S. 233, 56 S. Ct. 444, 80

L. Ed. 660], supra; De Jonge v. Oregon [299 U. S. 353, 57 S. Ct. 255, 81 L. Ed. 278], supra.

"The ordinance cannot be saved because it relates to distribution and not to publication. 'Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value.' Ex parte Jackson, 96 U. S. 727, 733, 24 L. Ed. 877 [879]. The license tax in Grosjean v. American Press Co. [297 U. S. 233, 56 S. Ct. 444, 80 L. Ed. 660], supra, was held invalid because of its direct tendency to restrict circulation.

"As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it. She was entitled to contest its validity in answer to the charge against her."

In the case of Schneider v. State of New Jersey, Town of Irvington, 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155, the Supreme Court of the United States held:

"The power of municipalities to enact regulations in the interest of the public safety, health, welfare or convenience may not be so employed as to abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion. * * *

"A municipal ordinance which prohibits persons in public streets from handing circulars, handbills, etc., to those willing to receive them, the purpose of which is to prevent the littering of a street by persons who after receiving them throw them away, violates the constitutional right of freedom of speech and of the press, even though it is enforced only if those who receive printed matter throw it away in the street, and though its operation is limited to streets and alleys and leaves persons free to distribute printed matter in other public places."

This opinion was a consolidation of four cases involving ordinances in cities from New Jersey, California, Wisconsin and Massachusetts.

The Los Angeles, Milwaukee, and Worcester ordinances prohibited the distribution of handbills on streets or sidewalks or parks and were upheld by the state courts which distinguished Lovell v. City of Griffin, supra, on the ground that distribution was merely excluded from public streets, leaving other places open for the exercise of the liberty of speech and press. The Supreme Court held that the purpose of keeping streets clean and of good appearance was insufficient to justify a person lawfully on the street from distributing literature, saying:

"Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press."

The town of Irvington, New Jersey, ordinance provided no one should canvass, solicit or distribute circulars or other matter or call from house to house without first reporting to and receiving a written permit from the chief of police. It required information to be given in the application and left it to the officer's discretion whether the permit might be granted, refused or recalled. Petitioner in that case as in this was a member of "Jehovah's Witnesses" who called from house to house and did substantially the same things as petitioner did in the case here. She was convicted and the highest court of New Jersey affirmed the conviction. Town of Irvington v. Schneider, 121 N. J. L. 542, 3 A. 2d 609.

Mr. Justice Roberts, delivering the opinion of the court, in part says:

"Four cases are here, each of which presents the question whether regulations embodied in a municipal ordinance abridge the freedom of speech and of the press secured against state invasion by the Fourteenth Amendment of the Constitution. * * *

"The freedom of speech and of the press secured by the First Amendment * * * against abridgment by the

United States is similarly secured to all persons by the Fourteenth against abridgment by a state.

"Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.

"Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion.

"This court has characterized the freedom of speech and that of the press as fundamental personal rights and liberties. The phrase is not an empty one and was not lightly used. It reflects the belief of the framers of the Constitution that exercise of the rights lies at the foundation of free government by free men. It stresses, as do many opinions of this court, the importance of preventing the restriction of enjoyment of these liberties.

"In every case, therefore, where legislative abridgment of the rights is asserted, the courts should be astute

to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to apprise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights.

"In Lovell v. City of Griffin [303 U. S. 444, 58 S. Ct. 666, 82 L. Ed. 940], supra, this court held void an ordinance which forbade the distribution by hand or otherwise of literature of any kind without written permission from the city manager. The opinion pointed out that the ordinance was not limited to obscene and immoral literature or that which advocated unlawful conduct, placed no limit on the privilege of distribution in the interest of public order, was not aimed to prevent molestation of inhabitants or misuse or littering of streets, and was without limitation as to time or place of distribution. * * *

"The Los Angeles, the Milwaukee, and the Worcester ordinances under review do not purport to license distribution but all of them absolutely prohibit it in the streets and, one of them, in other public places as well.

"The motive of the legislation under attack in Numbers 13, 18 and 29 is held by the courts below to be the prevention of littering of the streets and, although the alleged offenders were not charged with themselves scattering paper in the streets, their convictions were sustained upon the theory that distribution by them encouraged or resulted in such littering. We are of opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom

of speech and press. This constitutional protection does not deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets. * * *

"We are not to be taken as holding that commercial soliciting and canvassing may not be subjected to such regulation as the ordinance requires. Nor do we hold that the town may not fix reasonable hours when canvassing may be done by persons having such objects as the petitioner. Doubtless there are other features of such activities which may be regulated in the public interest without prior licensing or other invasion of constitutional liberty. We do hold, however, that the ordinance in question, as applied to the petitioner's conduct, is void, and she cannot be punished for acting without a permit.

"The judgment in each case is reversed and the causes are remanded for further proceedings not inconsistent with this opinion."

In the case of Stromberg v. People of California, 283 U. S. 359, 51 S. Ct. 532, 75 L. Ed. 1117, 73 A.L.R. 1484, the United States Supreme Court held:

"The conception of liberty under the due process clause of the 14th Amendment embraces the right of free speech. * * *

"The right of free speech is not an absolute one, and the state, in the exercise of its police power, may punish its abuse by those who indulge in utterances which incite to violence and crime, and threaten the overthrow of organized government by unlawful means."

In the case of Cantwell et al. v. State of Connecticut, 310 U. S. 296, 60 S. Ct. 900, 903, 84 L. Ed. 1213, 128 A.L.R. 1352, appellant, Cantwell, and his two sons, members of a cult known as Jehovah's Witnesses, and claiming to be ordained ministers were convicted upon information charging a violation of a state statute prohibiting any person from soliciting money or any valuable thing

for any religious, charitable or philanthropic cause, from any other than a member of the organization, unless such cause should have been approved by the secretary of the public welfare council, and providing that upon application the secretary shall determine whether such cause is a religious one or is a bona fide object of charity or philanthropy and conforms to reasonable standards of efficiency and integrity, and that if he so finds, he shall approve the same and issue a certificate that may be revoked at any time. The Supreme Court of the United States held that "the statute, as construed and applied to the appellants, deprives them of their liberty without due process of law in contravention of the Fourteenth Amendment."

Syllabus Nos. 2, 3, 4, and 5 read as follows:

"The fundamental concept of liberty embodied in the Fourteenth Amendment embraces the liberties guaranted by the First Amendment, including freedom of speech and of religion. * * *

"The freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose, guaranteed by the Fourteenth Amendment, is absolute and cannot be restricted by law; but the free exercise of the chosen form of religion, involving acts, is subject to regulation for the protection of society. * * *

"The power to regulate the exercise of a chosen form of religion must be so exercised as not unduly to infringe the freedom of religion protected by the Fourteenth Amendment. * * *

"Under the Fourteenth Amendment, a state may not by statute wholly deny the right to preach or disseminate religious views."

Mr. Justice Roberts, delivering the opinion of the court, in part says:

"The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand,

it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus the Amendment embraces two concepts,— freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection. In every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom. No one would contest the proposition that a state may not, by statute, wholly deny the right to preach or to disseminate religious views. Plainly such a previous and absolute restraint would violate the terms of the guarantee. It is equally clear that a state may by general and nondiscriminatory legislation regulate the times, the places, and the manner of soliciting upon its streets, and of holding meetings thereon; and may in other respects safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment. The appellants are right in their insistence that the Act in question is not such a regulation."

The principles applicable to the questions here presented have clearly been set forth in the opinions above quoted.

Considering the questions presented in the light of the First and Fourteenth Amendments to the Constitution of the United States, and the decisions thereon pronounced by the Supreme Court of the United States, which decisions are final and conclusive and to which all state tribunals must yield, it follows that the ordinance in question is unconstitutional and void.

From all the foregoing considerations we necessarily conclude that petitioner's trial, conviction and sentence in the municipal court of the city of Stillwater and all the proceedings were null and void.

It follows that petitioner was restrained of his liberty and held in custody without due process of law, and is entitled to a discharge from the imprisonment of which he complains. He is therefore by the judgment of this court discharged therefrom.

BAREFOOT, P. J., and JONES, J., concur.