# JOHN GREINER v. CITY OF YALE.

No. A-10228.   July 7, 1943.

(139  P.  2d  606.)

Henry S. Griffing, of Oklahoma City, and Swank & Swank, of Stillwater, for plaintiff in error.

I. O. Rambo, City Atty., of Yale, for defendant in error.

BAREFOOT, J.    Defendant, John Greiner, was charged in the municipal court of the city of Yale with the crime of distributing advertising circulars or handbills in violation of a city ordinance of said city, was tried, convicted and fined $5 and costs.   He appealed to the county court of Payne county, was retried, found guilty and his punishment assessed at a fine of $5 and costs. From this judgment he has appealed.

The assignment of error relied upon for a reversal of this case is that the ordinance under which defendant was charged and convicted is invalid on its face for the reason that it constitutes an infringement on the right of freedom of speech and freedom of the press which are protected by the First and Fourteenth Amendments to the Constitution of the United States.

The ordinance under which defendant was charged and convicted is as follows:

"An ordinance to preserve the peace and quietude of the City of Yale, County of Payne, State of Oklahoma: establishing officers and fixing the penalty for violation of same.

"Be it ordained by the board of trustees of the town now city of Yale, county of Payne, state of Oklahoma: * * *

"Section 22: It shall be unlawful in the City of Yale for any person to distribute any handbills, circulars, cards, papers printed in imitation of newspapers, or newspapers not admitted to the United States Mails, or any samples of patent medicine, or any advertising devise of any kind, by giving or handing any such article, herein mentioned, to any person passing along any side-walk or other thorough-fare of said City; or by throwing any such articles upon any public or private ground, or in any yard or inclosure, or in any hall-way, area-way, stairway or in any box or receptical kept for the receipt or delivery of the United States mail; or in any automobile, carriage, wagon, or other vehicle, or in any store room or place occupied as a residence unless consent therefor shall be obtained so to do from the City Council, or delivery thereof shall be made to the person in charge of such premises. * * *

"Section 56: The violation of this ordinance shall be punished by a fine of not less than One ($1.00) Dollar and not more than Twenty-five ($25.00) Dollars or by imprisonment in the City jail of not less than one (1) day, and not more than twenty-five (25) days, or both such fine and imprisonment, at the discretion of the court.

"Section 57: An emergency is hereby declared whereby for the preservation of the peace and quietude of the city of Yale, County of Payne, State of Oklahoma, that an emergency be declared and that this ordinance take effect upon its passage, approval and publication.

"Passed and approved this the 17th day of March, 1919.

"Ben Monnett, Mayor.

"Attest:

"This the 17th day of March, 1919.
"Geo. B. Gilder, City Clerk."

The facts with reference to the violation of the ordinance are admitted by the defendant, who was an employee of the "Aggie," "Mecca," and "Campus" Theatres in Stillwater, Okla. Handbills were distributed by defendant in person and by others whom he had employed, in the city of Yale without first obtaining a permit from the city council, or any other public official of the city They were distributed in the residence section by placing them in screen doors, and by handing them out on the streets. Defendant was arrested while in the performance of these acts, with the results above stated.

We have carefully examined the authorities cited by the defendant and by the city; and from such examination have come to the conclusion that the ordinance, as above set forth, is clearly unconstitutional and cannot be sustained.

It has been the settled policy of this court to follow the decisions of the Supreme Court of the United States as the highest court in this country, with reference to the construction and interpretation of the terms of the Constitution of the United States.

The Supreme Court has in recent cases definitely decided the issues here involved. Alma Lovell v. City of Griffin, 303 U. S. 444, 58 S. Ct. 666, 82 L. Ed. 949, Schneider v. Irvington, 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155; Largent v. Texas, 63 S. Ct. 667, 87 L. Ed. —; Jamison v. Texas, 63 S. Ct. 669, 87 L. Ed. —; Martin v. City of Struthers, Ohio, 63 S. Ct. 862, 87 L. Ed. —.

Our own court in elaborate opinions has also decided that ordinances very similar to the one here under consideration are invalid and in violation of the Constitution of the United States and of the State of Oklahoma. Ex

parte E. F. Walrod, 73 Okla. Cr. 299, 120 P. 2d 783; Ex parte Winnett et al., 73 Okla. Cr. 332, 121 P. 2d 312; Emch v. City of Guymon, 75 Okla. 1, 127 P. 2d 855.

It is unnecessary for us to go into a detailed discussion of the decisions of the Supreme Court of the United States above cited. They have been reviewed by this court in the cases above referred to. The Lovell Case was the first decided by that court. It deals with the distribution of handbills by a member of the sect known as Jehovah's Witnesses, without securing a permit from the city officials, as provided by an ordinance. The ordinance was very similar to the one in the instant case. The court held that it was in conflict with the United States Constitution's guarantee of freedom of speech and freedom of the press.

In the Schneider v. Irvington Case, supra, the court consolidated four cases which involved the validity of ordinances from cities in four states. These various ordinances are set out in the opinion, and are very similar to the one here under consideration. The lower courts had sustained the validity of the different ordinances, and in each instance had distinguished between the ordinance involved and the one in the Lovell case on the ground that the ordinance there in question prohibited distribution of handbills or literature anywhere within the city; while the ordinances under consideration prohibited distribution in a very limited number of places. The Supreme Court overruled this contention, and held that all of the ordinances were invalid within the terms of the Constitution, guaranteeing the right of freedom of speech and freedom of the press.

The Schneider v. Irvington Case involved the distribution of literature with reference to religious views,

the ordinance providing that before distributing handbills, one should secure a written permit from the chief of police, or officer in charge of the police headquarters. In the Los Angeles case, 308 U. S. 154, 60 S. Ct. 148, 84 L. Ed. 161, the violation was the distribution of a handbill advertising a meeting at which the speakers would discuss the war in Spain. In the Milwaukee case, 308 U. S. 155, 60 S. Ct. 148, 84 L. Ed. 162, one who was acting as a picket stood in the street in front of a meat market and distributed to passing pedestrians handbills which pertained to a labor dispute with the meat market. The City of Worcester, Mass., case, 308 U. S. 156, 60 S. Ct. 149, 84 L. Ed. 162, was with reference to a protest in connection with the administration of state unemployment insurance.

Justice Roberts in the opinion recognizes the right of every community to keep its streets open and available for the movement of people and property, as the primary purpose for which the streets are dedicated, but states that this right does not abridge the constitutional liberty of one rightfully on the streets to impart information through speech or the distribution of literature. In discussing the Irvington ordinance, he says [308 U. S. 147, 60 S. Ct. 146, at page 152, 84 L. Ed. 155]:

"While it affects others, the Irvington ordinance drawn in question No. 11, as construed below, affects all those, who, like the petitioner, desire to impart information and opinion to citizens at their homes. If it covers the petitioner's activities it equally applies to one who wishes to present his views on political, social or economic questions. The ordinance is not limited to those who canvass for private profit; nor is it merely the common type of ordinance requiring some form of registration or license of hawkers, or peddlers. It is not a general ordinance

to prohibit trespassing. It bans unlicensed communication of any views or the advocacy of any cause from door to door, and permits canvassing only subject to the power of a police officer to determine, as a censor, what literature may be distributed from house to house and who may distribute it. The applicant must submit to that officer's judgment evidence as to his good character and as to the absence of fraud in the 'project' he proposes to promote or the literature he intends to distribute, and must undergo a burdensome and inquisitorial examination, including photographing and fingerprinting. In the end, his liberty to communicate with the residents of the town at their homes depends upon the exercise of the officer's discretion. As said in Lovell v. Griffin, [303 U. S. 444, 58 S. Ct. 666, 82 L. Ed. 949], supra, pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people. On this method of communication the ordinance imposes censorship, abuse of which engendered the struggle in England which eventuated in the establishment of the doctrine of the freedom of the press embodied in our Constitution. To require a censorship through license which makes impossible the free and unhampered distribution of pamphlets strikes at the very heart of the constitutional guarantees.

"Conceding that fraudulent appeals may be made in the name of charity and religion, we hold a municipality cannot, for this reason, require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while others may not, be carried to the homes of citizens; some persons may, while others may not, disseminate information from house to house."

It will be noted that the ordinance in question is very general in its terms. It prohibits the distribution of handbills, etc., by anyone in practically all of the city of Yale without the consent of the city council. As stated in

the opinion of the Supreme Court, this leaves the matter to the discretion of the city council. If one should be opposed to the literature that was being distributed, it would be within their power to absolutely prohibit its distribution. It is true that in the instant case the distribution was of commercial advertisements, which could, by proper ordinance, be regulated in a proper manner, but by the broad terms of this ordinance, it could easily be enforced against one who was attempting to distribute literature for either political, social, economic or religious purposes. There was nothing to show that the handbills contained anything offensive to the good morals or interests of the city of Yale. The ordinance is not even limited to those who distribute handbills to advertise their wares or merchandise. It falls clearly within the class which is prohibited by the terms of the Constitution of the United States

For the reasons heretofore stated, the judgment and sentence of the county court of Payne county is reversed and remanded, with directions to discharge the defendant.

JONES, P. J., concurs.    DOYLE, J., not participating.