## HIRSH v. OKLAHOMA CITY.

No. A-11363. July 18, 1951.

(234 P. 2d 925.)

Leon S. Hirsh, Oklahoma City, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor, and Howard V. Cudd, Asst. Municipal Counselor, Oklahoma City, for defendant in error.

JONES, J. Leon S. Hirsh was charged in the municipal court of Oklahoma City with a violation of Title 11, section 65 of the Traffic Code of Oklahoma City, to wit: Parking in a loading zone reserved for commercial vehicles. From his conviction an appeal was taken to the court of common pleas of Oklahoma county. Upon a trial de novo in that court the defendant was convicted of said offense and sentenced to pay a fine of $1 and costs, and has appealed.

There is no dispute as to the facts, which were stipulated as follows:

"The defendant parked his car in the rear of the headquarters of the Local Council of the Boy Scouts of America, in the 200 block on Couch Drive, for the purpose of loading certain material and supplies in the Scout headquarters. He went into the headquarters and in less than five minutes returned with an armload of supplies for use in certain scout work in which he was engaged. On reaching his car, he found the Patrolman, J. J. Flynn, preparing a traffic ticket for parking in a loading zone. The particular place in which the defendant had parked his car was marked as restricted for loading purposes. Over defendant's protest of his right to use the zone for the purpose for which it was designated, he was given a ticket ordering him to appear in Municipal Court on August 10, 1949."

Defendant was driving his own personal automobile and not a commercial vehicle at the time of his arrest. The arrest and charge was made under and

by virtue of Title 11, section 65 of the Traffic Code of Oklahoma City which provides:

"Section 65. General Provisions. The City Manager, subject to the approval of the City Council, is hereby authorized, subject to the approval of the Traffic Commission, to determine the location of loading zones in any business districts and shall place and maintain appropriate signs, indicating the same and stating the hours during which the provisions of this section are applicable; provided that the installation of such zones shall be subject to the following provisions:

"(1) In business loop, loading zones shall be installed only where double parking or double stopping of commercial vehicles is prohibited by ordinance and adequate alley loading facilities are not available or where the roadway is so narrow or traffic so congested that such zones are warranted for the safety and convenience of the general public.

"(2) In business district outside the business loop, loading zones shall be installed only where adequate alley loading facilities are not available and vehicles are ordinarily parked at the curb so as to seriously interfere with access to a business establishment for the loading and unloading of commercial vehicles; provided, further, that such zones outside the business loop shall be installed only where the owners or managers of one or more interested business establishments file a written application for such zone with the traffic engineer, agreeing to pay to the city treasurer the costs of the necessary maintenance and replacements of signs and markings indicating such zone, and pay in advance to the City Treasurer the estimated actual cost of installation of said signs and markings as determined by the Traffic Engineer.

"(3) The average length of all loading zones shall not exceed thirty feet, and no one block of curb shall have more than two such zones.

"(4) When practical said zones shall be located in the central part of the block and adjacent to the termination of any alley which may be in the block, or shall be located at the ends of a block depending on the proximity of business establishments needing said zones.

"(5) The Traffic Engineer shall make definite surveys from time to time to determine the extent of usage of all official loading zones and any such zone which is found not being used consistently for the purpose for which it is intended shall be removed immediately by the city manager, subject to the approval of the City Council, and no refunds of any monies paid to the City Treasurer to cover the costs required shall be made.

"(6) No parking shall be permitted in any loading zone, except during hours that the City Manager, subject to the approval of the City Council, shall determine as permissible, considering the hours during which such zones are needed for loading and unloading purposes.

"(7) Commercial vehicles shall occupy a loading zone only for the purpose of and while actually engaged in the expeditious loading or unloading of merchandise and in no event for a period longer than thirty (30) minutes. Other vehicles shall occupy a loading zone only for the purpose of and while actually engaged in the expeditious loading or unloading of passengers."

The following issues are presented in the brief of defendant:

"I. The public streets are dedicated for the use of all the citizens without discrimination. Portions of the public thoroughfares may not validly be assigned for commercial purposes so as to give preferential rights to one class of citizens and to exclude others from their lawful use.

"II. Although the police power of a municipality extends to the reasonable regulation of the right to park vehicles, and parking even may be prohibited entirely, any restrictive exercise of the police power must have a reasonable

relation to the condition sought to be remedied. The police power cannot be exercised capriciously.

"III. An attempt to discriminate between private citizens and commercial organizations is an identical use of the public thoroughfares for loading and unloading, subjecting the private citizen to fine and imprisonment for doing the same things permitted to commercial organizations, deprives the private citizen of life, liberty and property without due process of law."

The issues are so connected that they may be combined for the purpose of discussion in this opinion.

Couch Drive, which is the particular street involved in this case, runs westward from Robinson street to Harvey street and is in the business zone of Oklahoma City which occupies what would normally be the alley between First and Second streets. The main thoroughfares adjacent to this drive are Robinson, Harvey, First and Second streets, and it was the contention of the city that the placing of this loading zone on Couch Drive, on which the automobile driven by defendant was parked, was a legitimate municipal regulation in order to control a dangerous traffic hazard.

Both parties concede that the streets of a municipality are dedicated to the public use and any title which a municipality has is in trust for the benefit for the public. The primary purpose of the public use is travel and the public has the absolute right to the free use of the streets for travel and any regulation which interfered with the right of the public to travel on the streets would be invalid. McGuire v. Wilkerson, 22 Okla. Cr. 36, 209 P. 445; Ex parte Duncan, 179 Okla. 355, 65 P. 2d 1015, 1016. This free use of the public streets for the purpose of travel does not include the right to park. In Ex parte Duncan, supra, the Supreme Court of Oklahoma stated:

"It is elementary that control over the highways, streets, and alleys within the corporate limits of the municipalities is reserved in the state, and the municipality can exercise only such control as has been delegated by the state. City of Tulsa v. Southwestern Bell Telephone Co., 10 Cir., 1935, 75 F. 2d 343. But cities have been clothed with full power to control and regulate the streets and alleys therein and may exercise their police power to the attainment of that end. Sections 2, 3, 7, article 18, Okla. Const.; sections 6380, 6397, 6410, O. S. 1931 (11 Okla. St. Ann. §§ 642, 660, 672). This power has been specifically given Oklahoma City by its charter."

In the case of City of Chicago v. McKinley, 344 Ill. 297, 176 N. E. 261, 264, the accused attacked the validity of a traffic ordinance which prohibited passenger vehicles from stopping for a period longer than three minutes and commercial vehicles from stopping for the purpose of loading or unloading merchandise or materials for more than 30 minutes in the downtown loop section of Chicago. In the body of the opinion it is said:

"The city council had the right to regulate the use of the streets by ordinances, so as to prevent, as far as possible, the loss and inconvenience arising from traffic congestion. It was for the council to determine what means should be adopted to remove the causes of such congestion, and its determination of such means cannot be disturbed, unless the means adopted are unreasonable. It is the province of the council to decide in what streets or parts of streets, during what hours, and for what length of time, limitation of the right to park or allow a vehicle to remain standing on the street is necessary to a proper regulation of traffic, and we are not justified in holding those contained in the ordinance to be unreasonable, unless they are clearly so, and in our judgment this cannot be said of them."

"No doubt it often would be convenient for a person to leave his car temporarily at the curb for such time as suits his convenience while he walks

across the sidewalk to do an errand, make a purchase, leave a message, make an appointment, telephone, or attend to some other business in his own or some other person's office, but, if one person may do it, so may every other person, and soon the curbs on both sides of the street might be lined with parked automobiles, the street crowded, traffic clogged, and great inconvenience caused to all persons having occasion to use the street for its primary and legitimate purpose. There is no such right of individuals so to park their cars on the street which may not be regulated by ordinance. Parking may be regulated as to time when, place where, and length of time permitted, due consideration being given to the necessities and convenience of those desiring to use the streets for going from one place to another, and of those who desire to use them for the transportation, delivery, and shipping of merchandise, materials, fuel, and supplies and the character of the traffic affected."

In the case of Blumenthal v. City of Cheyenne, 64 Wyo. 75, 186 P. 2d 556, 560, the Supreme Court of Wyoming sustained the validity of a traffic ordinance in the city of Cheyenne. In the body of the opinion the court in discussing the reasonableness of the ordinance which was adopted stated:

"It does not seem to be disputed that the traffic condition in Cheyenne was such that it was necessary to find some method to relieve it. The evidence shows that the city authorities deliberated a considerable time as to the best method to do so. They did not act arbitrarily unless it be that they chose the particular method which they did. The means adopted by the ordinance in question has a real, substantial and logical relation to the object sought to be accomplished, and is an effectual means to alleviate or remedy at least part of the evil of congested traffic in the city.

"* * *

"There is bound to be in such a case a discrimination against some party or parties in choosing a particular method. Hence, the mere fact of discrimination cannot be held to be a criterion of illegality. If it is necessary in a case of congested traffic for the courts to carefully scrutinize as to what is the best available method to relieve it, that would be equivalent to depriving city authorities of all discretion, and would substitute the courts as administrators of municipal affairs in that respect. But that is not the law. It is not the province of the judiciary to set up its judgment against that of the city authorities as to the method or means adopted toward the accomplishment of a legitimate object unless clearly unreasonable. The method adopted need not necessarily be the best. State ex rel. Newman v. City of Laramie et al., 40 Wyo. 74, 275 P. 106; People ex rel. v. Thompson, 341 Ill. 166, 173 N. E. 137.

In People's Rapid Transit Company v. Atlantic City, 105 N.J.L. 286, 144 A. 630, 632, the court stated:

"It is settled in this state that the regulation of motor vehicles on particular streets, even to their complete exclusion therefrom, when deemed necessary in the public interest, is within the police power delegated to municipalities.'

In the case of Corbett-Barbour Drilling Co. et al. v. Hanna, 203 Okla. 372, 222 P. 2d 376, 381, the court had under consideration the Oklahoma City municipal ordinance defining commercial vehicles and in that opinion it was stated:

"The legislative body of a municipality may make classifications in the application of an ordinance which are relevant to the legislative purpose. Keaton v. Oklahoma City et al., 187 Okla. 593, 102 P. 2d 938; Martin v. Rowlett, 185 Okla. 431, 93 P. 2d 1090; Ex parte Duncan, 179 Okla. 355, 65 P. 2d 1015; Calkins v. Ponca City, 89 Okla. 100, 214 P. 188; Greiner v. City of Yale, 77 Okla. Cr. 135, 139 P. 2d 606; Ex parte Walrod, 73 Okla. Cr. 299, 120 P. 2d 783. Such classifications are not prohibited by the equal-protection clause of the Federal Constitution where reasonable, not arbitrary, and based upon a fair and

substantially different relation to the object of the legislation. Cotton Club v. Okla. Tax Comm., 195 Okla. 403, 158 P. 2d 707; Ex parte Strauch, 80 Okla. Cr. 89, 157 P. 2d 201; Harris v. State, 74 Okla. Cr. 13, 122 P. 2d 401; Skinner v. State of Okla. ex rel. Williamson, 316 U. S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655; Old Dearborn Dist. Co. v. Seagram-Distillers Corp., 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109, 106 A. L. R. 1476.

"We cannot say as a matter of law that the class of vehicle here designated is not reasonably and substantially different from other types of vehicles in its relation to the dangers incident to travel upon the highways. There is no discrimination as to owners of vehicles falling within the class. The legislative body of the municipality must have determined this to be true. The city may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses. The inhibition as to commercial vehicles as a class as hereinbefore defined is not arbitrary or capricious, and must be sustained as a valid exercise of the police power of the municipality."

A reading of the ordinance hereinabove quoted shows that the attorney for the city in preparing the ordinance brought it within the rules of law announced in the above cases. Sections 1 and 2 limit the installation of loading zones to certain areas where the "traffic is so congested that such zones are warranted for the safety and convenience of the general public". Section 3 places a limit on the length of the loading zone and provides that no block shall have more than two such zones. Section 4 provides that said zones shall be placed adjacent to the termination of an alley or the end of a block, depending on the proximity of the business establishment getting said zone. Section 5 is very important because it provides that the traffic engineer continue from time to time to make surveys to determine the extent of the usage of all loading zones and providing for the removal of any loading zones which are not being used consistently for the purpose for which they were intended. Section 7 limits the time which a commercial vehicle may occupy a loading zone.

We believe that it was necessary for the city council in its regulation of the use of the streets to classify vehicles according to their commercial or noncommercial usage. The city council as the law-making body of the city has some discretion in determining what is the best available method to relieve the public of traffic hazards. It was necessary in order to deliver merchandise to the business establishments that the city install loading zones. Otherwise, there would be double parking or the parking at the curbs would be in a hopeless state of confusion, all of which would endanger public travel on the streets.

In the case of Ex parte Strauch, 80 Okla. Cr. 89, 157 P. 2d 201, 202, this court held:

"In determining the question of the constitutionality of a statute, and as to whether it is in violation of the 'equal protection' clause of the Fourteenth Amendment to the Constitution of the United States, the following fundamental principles are important:

"(a) The equal protection clause of the Fourteenth Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

"(b) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"(c) When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

"(d) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

"The Legislature is not bound, in order to support the Constitutional validity of its regulation, to extend it to all cases which it might possibly reach. It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest."

It is the duty of the city council and not the courts of Oklahoma to determine the policy of the city to be expressed in municipal ordinances. The wisdom of the council in passing ordinances may not be questioned by the courts, but any citizen has a right to present in the courts the question as to the power of the law-making body of the city to enact a certain ordinance.

It is our conclusion that the ordinance in question is not subject to the constitutional objections made against it. There is some discrimination, it is true, between commercial vehicles and passenger vehicles, but the city had the authority to make such classification under the police power granted to it by the state, and its classification in this instance has a reasonable relation to the traffic conditions sought to be remedied.

The judgment is affirmed.

BRETT, P. J., and POWELL, J., concur.