# In re SELTENREICH.

No. A-11702.   May 7, 1952.

(244 P. 2d 587.)

Pat Brogan, Oklahoma City, for petitioner.

H. L. Gasaway, Enid, for respondent.

JONES, J.  This is an original action in habeas corpus wherein the petitioner attacks the validity of Ordinance No. 3389 of the city of Enid.  The petitioner was convicted of violating said ordinance and sentenced to pay a fine, and upon his refusal to pay said fine was incarcerated in the city jail by the respondent chief of police.  He brings this action to secure his release from such confinement.

The ordinance in question was adopted with the emergency clause attached on December 12, 1951.  That part of the ordinance which is under attack provides:

"Section 5

"Turning, Slowing And Stopping

"(h)  Left Hand turns are prohibited at the following intersections, to-wit:
Grand Ave. and Randolph.
Grand Ave. and Broadway
Independence and Randolph.
Independence and Broadway.
Independence and Main.
Except that intra-city passenger busses may make a left hand turn
at the intersection of Randolph and Independence."

The petitioner is a taxicab driver in the city of Enid.  He was convicted of making a left-hand turn at the intersection of Broadway and Grand avenues.  Petitioner made application to the superior court of Garfield county in a habeas corpus proceeding in which he attacked the validity of said ordinance and in that case the ordinance was upheld.

A transcript of the evidence presented before the superior court judge was introduced at the hearing before this court.  In addition other witnesses testified.  From this evidence it is established that the city of Enid is a city of the first class with a population of approximately 36,000; that intracity busses are licensed to do business in the city of Enid and each carries approximately twenty-five to thirty passengers.  The bus routes within the city are fixed and must be approved by the city manager.  The busses which are permitted under the ordinance to make the left-hand turn at the intersection of Independence and Randolph streets are those on the most widely used route in the city.  This route serves Phillips University on the east side of the city and the Enid High School on the southwest side of the city.  The city of Enid has a public square approximately two blocks long and one block wide.  There are no business establishments within the square.  Randolph street is on the north side of the square running east and west, while Independence and Grand avenues run north and south on the west and east side of the square respectively.  Randolph street on the north side of the square is 84 feet wide, the same as Independence avenue on the west side of the square.  The

taxicab operated by the petitioner, and all other taxicabs licensed in the city of Enid, are the standard five passenger automobiles which are exactly the same as private passenger automobiles, except the taxicabs have signs on them denoting they are taxicabs. The city of Enid has designated certain parking stands around the public square for the exclusive use of taxicabs and such taxicabs are permitted to use any street within the city of Enid. The main business district of Enid is built immediately around the public square and most of the people who board the busses in the residential areas come to the city square.

Walter Stewart, captain in charge of traffic for the city of Enid, in testifying as to why it was desirable to permit intracity busses to make a left turn at the corner of Independence and Randolph testified:

"A. The reason, and the only reason that it was done, to my knowledge, that that was the only vehicle permitted to make that left hand turn, was from a safety angle. The only other way that bus could make its regular route would be to come to the intersection of Randolph and Grand, make a right hand turn, go a block North to Maple and make a left hand turn. In making that right hand turn from Randolph on to Grand, it comes off of a 84 foot street on to a 51 foot street, with parking on both sides of the street, which takes up around sixteen feet on that particular street. We try awfully hard to flow that traffic down North Grand, and with a bus or truck it makes it inconvenient to get through. At the intersection of Maple and Grand, two cars can drive up there and go straight ahead, or they can go right or left, where a bus would take up more than one driving lane and cause the cars to fall in behind it. Also, in making a left hand turn at that particular intersection, you have through traffic at two highways that are very heavily traveled, both north and south traffic, and in making a left hand turn with a bus, you would create a heavy traffic jam there every time it was done. Grand is only 51 feet going north, from Randolph north."

To offset the testimony of Captain Stewart the petitioner introduced as a witness Captain Harry Davidson of the Oklahoma City Traffic Department who testified that he went to the city of Enid at the request of petitioner and observed traffic conditions around the square and particularly at the intersection of Independence and Randolph avenues. He testified in his opinion the ordinance authorizing intracity busses to make a left turn at the corner of Independence and Randolph avenues, instead of making safer traffic conditions, was in reality creating a traffic hazard and that the city should either prohibit all left turns or none at all. He admitted that he was not present during the peak periods of traffic.

A witness for the city then testified that the city had made a survey during peak periods of traffic over a period of several months in order to determine the wisest and most effective ordinance to adopt to properly regulate traffic and to serve the public with the least inconvenience; that Enid is expanding constantly and traffic movement has increased about ten percent in the past six months; that the biggest congestion of traffic is around the public square; that in a two week period before the ordinance was adopted there were five pedestrian injuries around the square, while during the several weeks since the ordinance has been adopted there have been no pedestrian injuries.

In the brief of petitioner filed herein it is contended that the ordinance is invalid for the following reasons:

First: It conflicts with the statutes of the state of Oklahoma, and particularly Tit. 47 O.S. 1951 § 22.11.

Secondly: The ordinance is unreasonable in that it discriminates in favor of intracity busses.

The statute upon which the petitioner relies provides:

"The local authorities of cities, towns and villages of this State shall have no power to pass, enforce or maintain any ordinances, rules or regulations requiring from any owner to whom this Act is applicable, any tax, fee, license or permit for the free use of the public highways or excluding or prohibiting any motor vehicle registered in compliance with this Act or the accessories used thereon from the free use of the public highways, and no ordinance, rule or regulation in any way contrary to or inconsistent with the provisions of this Act, now in force or hereafter enacted, shall have any force or effect; provided, that the powers given to local authorities in cities of the first class to enact general rules and ordinances applicable equally to all vehicles upon certain streets in such cities where the traffic is heavy and continuous, and the powers given local authorities to regulate vehicles offered to the public for hire or for processions, assemblages, or parades in the streets or public places, shall remain in full force and effect; and provided further, that the local authorities may set aside a specified public highway or highways for speed contests or races to be given under proper restrictions for the safety of the public; and provided further, that local authorities may exclude by ordinance or regulation motor trucks and vehicles used exclusively for commercial purposes from the parks and parkways of this State, provided such ordinance or regulation is applicable equally and generally to all other vehicles used for the same purpose; and provided further, that local authorities may exclude motor vehicles from any cemetery or ground used for burial of the dead; and provided further, that cities and towns may regulate the speed of motor vehicles within their corporate limits." 47 O. S. 1951 § 22.11.

It is the contention of petitioner that under the provisions of the above statute cities of the first class, such as the city of Enid, are permitted to pass regulations and ordinances pertaining to movement of automotive vehicles on the public streets only where such regulations and ordinances apply equally to all vehicles.

We have carefully examined this statute and its historical background. As it now appears in the code it was a part of House Bill No. 528 of the 1941 legislature, which was a very comprehensive enactment pertaining to the licensing, registration, and taxation of motor vehicles. The particular statute hereinabove quoted was Section 12 of that act and the subject matter of the section as shown by the headnote to that section reads:

"Local Authorities—No Power to Tax."

The evident purpose of the statute was to prohibit cities, towns, and villages from attempting by ordinance to charge a tax, fee, license, or permit for the free use of the public highways in such cities, towns, or villages, and to prohibit the passage of any ordinance or regulation which conflicted with the terms of that particular act.

The proviso upon which petitioner relies does not appear to be a grant of power but was inserted in the act to emphasize that the general power conferred by statutes upon cities, towns, and villages to regulate traffic within the corporate limits was not affected so long as a license, fee or permit was not charged for the free use of such streets. Furthermore, in 1949 the Oklahoma Legislature passed a comprehensive motor vehicle code, among which provisions appeared the following:

"None of the provisions of this Act shall be construed to prohibit any incorporated city or town from enacting ordinances or regulations within the limitations of this Act and enforcing the same with respect to controlling traffic." Tit. 47 O. S. 1951 § 121.12.

Since statehood cities have been authorized under the general powers granted to cities by statute to enact ordinances

"for the good government of the city, the preservation of the peace and good order, * * * the benefit of trade and commerce, and the health of the inhabitants thereof". Tit. 11, O. S. 1951 § 642.

The city council has also been further authorized by statute to "regulate, prevent and punish the riding, driving or passing of horses, oxen, mules or other teams, or any vehicle, over, or upon, or across sidewalks, or along any streets of the city." Tit. 11, O. S. 1951 § 657.

The Supreme Court of Oklahoma in Constant v. Brown, 189 Okla. 147, 114 P. 2d 477, held that the proviso relied upon by petitioner does not constitute a grant or delegation of power to the cities but merely affirms existing powers. It was further held that 11 O. S. 1951 § 657, supra, was the only statute expressly authorizing cities to regulate the driving of vehicles along the streets.

In 37 American Jurisprudence, Municipal Corporations, Sec. 314, the general rule is well stated as follows:

"Municipal corporations are commonly given power to regulate the use of their streets and sidewalks, or more specifically, the vehicles used thereon, and reasonable regulations in respect to the operation of vehicles aimed at preserving the safety, welfare, and convenience of the public are clearly valid."

In Vol. 64 C. J. S., Municipal Corporations, § 1761, at page 204, it is stated:

"Ordinances regulating the use of streets as highways are to be construed with respect to changing methods of locomotion and environment, and the constraint of overpowering necessity; and, where such an ordinance has been validly enacted, and is not in conflict with the general laws, it must be given full force and effect as a law of the locality to which it applies."

In Ex parte Duncan, 179 Okla. 355, 65 P. 2d 1015, 1016, it is stated:

"It is elementary that control over the highways, streets, and alleys within the corporate limits of the municipalities is reserved in the state, and the municipality can exercise only such control as has been delegated by the state. City of Tulsa v. Southwestern Bell Telephone Co. (10 Cir., 1935), 75 F. 2d 343. But cities have been clothed with full power to control and regulate the streets and alleys therein and may exercise their police power to the attainment of that end. Sections 2, 3, 7, article 18, Okla. Const.; sections 6380, 6397, 6410, O. C. 1931 (11 Okla. St. Ann. §§ 642, 660, 672)."

In the recent case of Hirsh v. Oklahoma City, 94 Okla. Cr. 249, 234 P. 2d 925, 926, this court established the following rules of law for guidance in passing upon cases involving the power of municipalities to adopt ordinances pertaining to the use of the public streets for travel:

"The streets of a municipality are dedicated to the public use and any title which a municipality has is in trust for the benefit of the public.

"The primary purpose of the public use of streets of a municipality is travel and the public has the absolute right to the free use of the streets for travel and any regulation which interfered with the right of the public to travel on the streets would be invalid.

"A city through the exercise of its police power may regulate the traffic on streets and alleys within the city.

"City council of Oklahoma City had the right to regulate the use of the streets by ordinances, so as to prevent, as far as possible, the loss and inconvenience arising from traffic congestion. It was for the council to determine what means should be adopted to remove the causes of traffic hazards, and its determination of such means cannot be disturbed, unless the means adopted are unreasonable. It is the province of the city council under its police power to decide in what streets or parts of streets, during what hours, and for what length of time, limitation of the right to park or allow a vehicle to remain standing on the street is necessary to a proper regulation of traffic, and the courts should not interfere so as to set aside an ordinance making such regulations unless it is clearly unreasonable.

"The legislative body of a municipality may make classifications in the application of an ordinance which are relevant to the legislative purpose, and in connection with the regulation of traffic it may classify vehicles as commercial or non-commercial according to their usage.

"In determining the question of the constitutionality of a municipal ordinance, and as to whether it is in violation of the 'equal protection' clause of the Fourteenth Amendment to the Constitution of the United States, the following fundamental principles are important:

"(a)  The equal protection clause of the Fourteenth Amendment does not take from the municipality the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

"(b)  A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"(c)  When the classification in an ordinance is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the ordinance was enacted must be assumed.

"(d)  One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

With the above rules of law in mind it is apparent to us that the ordinance in question is not subject to the attacks leveled against it.  If the contention of petitioner was correct, that the city could pass no ordinance regulating traffic unless it applied "equally to all vehicles", then the city would not be permitted to prohibit large moving vans, or trucks moving heavy machinery, or oilfield trucks, or huge transports, from using the main business district of the city, nor would they be permitted to require slow moving vehicles, such as a tractor or road machinery, to keep to one side of the street at points where traffic is congested.  Such an ordinance has been upheld.  State v. Boardman, 93 Me. 73, 44 A. 118, 46 L.R.A. 750.  Furthermore, if the proviso relied upon by petitioner should be construed as he contends, the city would have no authority to give fire trucks, police cars, and ambulances the right of way at street intersections, or to except these vehicles from the speed limits applicable to all other vehicles.

In determining the reasonableness of the ordinance in question, the record discloses that the city of Enid by various ordinances experimented with regulations attempting to handle the traffic congestion around the public square.  The present ordinance was the culmination of those surveys and experiments.

The busses could not serve the great number of patrons who boarded the busses at Independence Avenue except by permitting the left turn.  Busses and all other vehicles were forbidden from making left turns at the other places mentioned in the ordinance.  It is significant that the petitioner was not convicted of making a left turn at Independence and Randolph streets but rather he was convicted of making a left turn at the intersection of Broadway and Grand Avenues, at which intersection all vehicles including busses were prohibited from making a left turn.  The city manager showed that it would be hazardous to attempt to reroute the city bus along other streets for the reason that other streets were only fifty feet wide, and he pointed out traffic hazards on all the suggested streets which would make the danger to the public greater than any danger that might be created by allowing the intracity bus to make the one left turn at Independence and Randolph.  The fact that busses have fixed routes operating on fixed time schedules which they must follow would authorize the city to make an exception as to them in the regulations which were adopted.

The city of Enid, like many other cities, is struggling with an enormously difficult problem incident to the growth of automobile traffic, and we feel the courts should be careful to refrain from interference in any regulation that might be adopted unless it is shown that such regulation is in direct conflict with a state statute or that in its enforcement there is a real and material infraction of rights guaranteed by either the state or federal constitution. The city council has a positive duty and has been vested with power to pass ordinances for the protection of the lives and health of the inhabitants of the municipality. In a populous city there are many matters which call for immediate action. In Enid the city is growing rapidly, the number of automobiles in use upon the streets has materially increased. Because the legislature meeting every two years could not directly make the regulations which were needed is the reason that wide authority has been given to cities under their police power to make reasonable regulations pertaining to conditions which might arise which are hazardous to the public health or safety.

The ordinance in question does not restrict the absolute right of the public to the free use of the streets for travel. They have not been deprived of access to any street. The public may use either Randolph or Independence Avenue. The ordinance is merely a traffic regulation and does not interfere with the free use of the streets. While it is true that the ordinance in question favors the intracity busses at the one intersection, the city has made a showing that the regulation bears a reasonable basis to the conditions sought to be remedied, to-wit: The regulation of traffic with the health and safety of the inhabitants uppermost in mind, together with the thought of giving them transportation service. The mere fact that there is discrimination against some party does not determine the illegality of a regulation. Often there is discrimination against some party in choosing a particular method. Hirsh v. Oklahoma City, supra. The city is vested with authority under the statutes hereinabove quoted to determine what is the best available method to relieve traffic congestion and the courts may not be substituted as administrators of municipal affairs in that respect unless it can be clearly shown that the action taken by the municipal authorities was unreasonable or arbitrary and bore no reasonable basis to the object sought to be attained or was clearly in contravention of the statutes or constitution.

The writ of habeas corpus is denied.

BRETT, P. J., and POWELL, J., concur.