### BRANSON v. STATE.
#### No. A–11904.

Criminal Court of Appeals of Oklahoma.
May 5, 1954.

Claude Hendon, Scott Hendon, Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error Claude Nipper Branson, defendant below, was charged by information in the county court of Pottawatomie county, Oklahoma, with the offense of unlawful transportation of intoxicating liquors, towit, 31 pints of tax paid whiskey (none of which was exposed to the senses without the aid of a search). The offense was allegedly committed on June 2, 1952, on Highway 9 and 9A north of the city of Earlsboro, in said county and state. The defendant was tried by a jury, convicted, and his punishment assessed at 60 days in jail and a fine of $100; judgment and sentence was entered accordingly, from which this appeal has been perfected.

To the charge, a motion to suppress the evidence on the ground of an unlawful search and seizure was filed, and hearing had thereon, before the trial of the case on the merits.

The defendant contends the trial court erred in refusing to sustain his motion to suppress the evidence. The pertinent facts as testified to at the hearing on the motion by the officers making the arrest are as follows:

"Q. Did you observe anything unusual about his manner of driving as you followed him? A. When he turned north into Earlsboro was the first thing I noticed about his driving. That is a four lane highway there with a small island down the center, and he turned out into the center lane, which would be the wrong lane of traffic, so when he went north, we followed him up town.

"Q. For observation?. A. Yes, just for observation."

The officers followed the defendant to a point on a little used dead end street in front of the Spencer home, at the end of the street. The officers followed him into the house and told him to come outside. They then took custody of the defendant on mere suspicion, and started a search. In Reece v. State, Okl.Cr., 259 P.2d 336, speaking for this court said:

"The search was made on mere suspicion and if the defendant had owned the property which was searched or had any proprietary interest in it, the motion to suppress would have been good."

The record shows the defendant owned the car searched in the case at bar. Saltsman v. State, Okl.Cr., 243 P.2d 737, 742. As was said therein:

"To justify this arrest under the state of the record it must be done by reason of what the officers discovered after they took the defendant into custody, rather than at the time they sought to take him into custody. This cannot be done."

After they got him outside to the car, in the street, they informed him he was under arrest for parking in the middle of the street, but he was actually in custody when they called him outside. Thereafter the car was searched. The officers further testified:

"Q. When did you first notice that this was Claude N. Branson's car? You knew it down there at the tavern when you say it pass? A. I don't remember. I remember mentioning it to Morris that I knew whose car it was because I had stopped him over in Tecumseh one day.

"Q. You knew whose car it was? A. Yes, sir. * * *

"Q. When you saw that car and knew it was his car down there by the tavern, you started out with the intention of following it and searching it? A. No, sir.

"Q. Did you have in mind following this car where ever it went and searching it? A. No, I would not say that until we recognized the car.

"Q. When did you recognize the car? A. I don't remember exactly when we did—when he turned north probably.

"Q. You noticed then it was his car? A. Yes, sir. * * *

"Q. Tell the Court why you were following him? A. We just wanted to follow him, that is what I said. I recognized the car.

"Q. As a matter of fact you did not follow him for any reason of his

driving, you followed him because you wanted to search his car, thinking there might be some whisky in it? A. I have answered that three times.

"Q. Was it that you thought there might be whisky in the car? A. I thought possibly there was, he was in that business.

"Q. And that is the primary reason that you followed him? A. I thought there was a chance he had some. But that is not the reason we followed him.

"Q. Was that the primary reason you followed him, because you thought he might have whisky? A. Possibly after we recognized the car. He had made an improper turn and we were going to follow him anyway.

"Q. You did not stop him when he made that supposed improper turn? A. No, sir.

"Q. You never arrested him for making that turn? A. No, but we could have.

"Q. But when he drove on east and and then north and then east up in the outer limits of the town of Earlsboro on a weedy street, you pulled up behind him, and there arrested him, as you say, because he was parked improperly, was that the reason you arrested him? A. Yes, sir.

"Q. You did not arrest him so you could search him and see if (he) had liquor? A. *We placed him under arrest and searched his car; we wanted to look in his car and see what was in it.*"

The foregoing evidence leads us to conclude that when the officers saw the defendant's car and recognized it as the defendant's they started in pursuit, and acted on suspicion until the search and discovery was made. We are of the opinion under the conditions herewith presented the arrest for parking in the middle of the street was a mere pretext or subterfuge. This conclusion is confirmed by the officers' testimony in the hearing on the merits as follows:

"Q. You followed him because you suspected he was hauling whisky? A. After I recognized him, yes.

"Q. When he went up through Earlsboro, his driving was all right? A. Yes, until he parked.

"Q. And you followed him? A. Yes, sir.

"Q. And as you followed him up there to that little, seldom used road, on the north edge of Earlsboro, on this weedy street, you say he parked on the wrong side of the road? A. *He parked pretty close to the center, blocking the road.*

"Q. He got there before you did? A. Yes, sir.

"Q. Did you ever see him get out of his car? A. Yes, sir.

"Q. You are sure of that? A. Yes, sir.

"Q. The truth is that it was five or ten minutes before you came up there behind him after his car was parked? A. No, I think we both stopped about the same time.

"Q. Did you ever honk at him? A. No, sir.

"Q. Did you shine the red light on him? A. I don't remember.

"Q. You did not? A. I doubt if I did.

"Q. You did not have a siren on him, did you, to try to get him to stop? A. No, sir.

"Q. You and Trooper Morris pulled up behind him and you were thinking of some excuse you could use to arrest him so you could search his car and see what he had? A. I don't know about the thinking.

"Q. Now, you want to be fair, you were trying to figure out some excuse for making a search of the car? A. We were going to search him when he parked in the middle of the road, we were going to talk to him and explain to him we could arrest him for parking in the middle of the road.

"Q. *You were going to do that so you could search his car?* A. *After I recognized him, yes.*

"Q. You testified a little earlier in this proceeding where you were asked

this question, 'At the time you stopped the car and got this man out' you were asked, 'Did you arrest him before you searched his car?', and you answered that you arrested him before you searched his car? A. That it true.

"Q. And you were asked if whatever arrest you made of him, or purported arrest, before you searched the car, you were asked this question, *'Did you arrest him after you had in mind an excuse to search his car?'*, to which you gave what answer? A. Yes, we arrested him so we could search his car.".

▆ The motion to suppress presented a judicial question for the determination of the trial court. In Hoppes v. State, 70 Okl. Cr. 179, 105 P.2d 433, 434, it was said:

"Whether a search of or seizure from an automobile, parked on a public street, without a warrant, is or is not unreasonable within the meaning of the constitutional provision, forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search or seizure is made.

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not upon any probable cause of the commission of a felony, but upon a mere suspicion, is in violation of Bill of Rights, Sec. 30, and evidence obtained by such a search is inadmissible. Const. Art. 2, Sec. 30, Okla.St.Ann.

*  *  *  *  *  *

"Officers without warrant stopping and searching an automobile on public highway must possess knowledge or information of facts constituting probable cause for reasonable belief that automobile contains illegal liquor."

In the body of the opinion this court said:

"The testimony of the officers is to the effect that they suspicioned that intoxicating liquor was being transported in the defendant's automobile, and they followed her for the purpose of over-taking, stopping and searching her automobile for intoxicating liquor;  *  *.

"When the officers started in pursuit, they began an effort to search, and tested by the above statutory provisions when the officers sounded the siren, and the defendant stopped her car and submitted to the custody of the officers, the arrest was then and there consummated. The search that followed was an incident thereto."

See also Crim v. State, 78 Okl.Cr. 153, 145 P.2d 444, to the same effect. In the recent case of Brinegar v. State, Okl.Cr., 262 P.2d 464, 466, we said:

"Officers are not justified after a valid arrest of motorist for minor traffic violation, in searching his person or his immediate presence, such as the seats and glove compartment of his car, excepting in cases where the officers have reasonable grounds for such action, the seats and glove compartment of the car may be searched for firearms, and this only as a precaution for the safety of the arresting officer and to prevent escape, when done in good faith.

"The cardinal proposition for consideration in the determination of the lawfulness of a search of a motorist, after arrest for a minor traffic violation, such as may be found in some of the provisions of the Uniform Traffic Code, Tit. 47 O.S.1951, §§ 121.1–121.13, or municipal ordinances covering traffic, is was it reasonable? And this is a judicial question to be determined in each case in view of all the facts and circumstances under which the search and seizure was made.

"The search of a locked turtle-back of an automobile as incident to the arrest of a motorist for a minor traffic violation committed in officers' presence, is, absent additional cause, unreasonable."

Therein, it was further said, "'An arrest may not be used as a pretext to search for evidence.'"

Under the foregoing admissions both on the hearing of the motion to suppress and the merits of the case, and the law applicable thereto, we are of the opinion that the arrest made herein was a mere pretext to search for evidence and the trial court erred in overruling the defendant's motion to suppress the evidence, and on the trial the state's evidence was improperly admitted, in violation of the defendant's constitutional rights. The judgment of the county court of Pottawatomie county must be and accordingly is reversed, and the case remanded, with directions to dismiss.

POWELL, P. J., and JONES, J., concur.