JACK'S SUPPER CLUB, LTD., an Oklahoma Corporation, Plaintiff in Error,

v.

CITY OF NORMAN, Oklahoma, a Municipal Corporation, Defendant in Error.

No. 38922.

Supreme Court of Oklahoma.

April 11, 1961.

292

Jack B. Sellers, Drumright, Joe A. Moore, Sapulpa, for plaintiff in error.

John M. Luttrell, Norman, for defendant in error.

Oklahoma Association of Municipal Attorneys, Edward H. Moler, Municipal Counselor, Roy H. Semtner, Asst. Municipal Counselor, Oklahoma City, amici curiæ.

HALLEY, Justice.

This action was filed in the District Court of Cleveland County September 17, 1959, by Jack's Supper Club, Ltd., against the City of Norman, incorporated as a city of the first class. A permanent injunction was sought against the City of Norman from enforcing or attempting to enforce an ordinance passed by said city on September 8, 1959, which regulated private clubs where the drinking of alcoholic beverages by members and guests was permitted. The ordinance also provided for the licensing of such clubs, established a license review board, prohibited violations within the corporate limits of the City of Norman, provided for forfeiture of licenses upon violation and declared an emergency.

The trial court found for the defendant and plaintiff has appealed. The parties will be referred to as plaintiff and defendant as they appeared in the trial court.

Plaintiff alleged that it is an Oklahoma Corporation, organized for the express purposes of owning and maintaining and operating private clubs within the State of Oklahoma, and that it owns a facility to be used for that purpose within the city limits of Norman, when defendant on September 8, 1959, passed Ordinance No. 1165, above mentioned and will enforce said ordinance unless enjoined. Plaintiff alleged that it has no adequate remedy at law and that plaintiff will suffer great loss and damages unless defendant is prevented from attempting to enforce the ordinance complained of as being unlawful and contrary to the State Constitution.

Only two witnesses were called to testify. Jack B. Sellers, president of the plaintiff corporation, testified for it and the chief of police of the City of Norman testified for the defendant. There were numerous exhibits put in evidence, including the Articles of incorporation of the plaintiff and the Charter of the City of Norman, a copy of Ordinance No. 1165, and the by-laws of Jack's Supper Club, Ltd., and similar pertinent exhibits.

Plaintiff submits five propositions which we will discuss in the order named. First it is contended that the defendant municipal corporation is without authority to enact Ordinance No. 1165. Our attention is directed to the definition of "private club" in Section 1 of the ordinance which is as follows:

"For the purpose of this Ordinance a private club is defined as any association, person, firm or corporation, key club, bottle club, locker club, pool club or any other kind of club or association, excluding the general public from its premises or place of meeting or congregating or operating or exercising control over any other place where persons are permitted to drink alcoholic beverages other than in a private home."

In 1959 the Legislature of Oklahoma passed House Bill No. 825, which is the Oklahoma Alcoholic Beverage Control Act and is 37 O.S.Supp.1959, Sections 501 to 567 and S.L.1959, p. 141, which restricts the rights and powers of municipal corporations in Oklahoma in regard to the issuance of licenses and levying fees and taxes involving alcoholic beverages, and Section 18 of that Act provides that the Board shall have exclusive authority as to the issuance and regulations of licenses, and no city may issue regulations in conflict with or additional to the statutes of the state or rules of the Board.

However, we note that Section 18, supra, refers to licenses to sell intoxicating liquor and has nothing to do with licensing private clubs, such as are dealt with in Ordinance No. 1165.

Ex parte Gammel, 89 Okl.Cr. 400, 208 P. 2d 961, 966, is a leading case on the powers of a municipality to control the sale of beverages. The City of Shawnee passed an ordinance regulating the sale of 3.2 beer and placed additional rules upon the sale of such beer, including the height of the paint obscuring the front windows and the height of booths used where beer was sold. This ordinance was held invalid because it was contrary to general laws on that subject, and provided the issuance of a permit by the County Judge to sell beer. But the court stated that as a general rule a city may pass ordinances which "move in the same direction" as State laws and may make an offense under a city ordinance which was already an offense under State law, but not an ordinance contrary to the general laws of the State.

In Constant v. Brown, 189 Okl. 147, 114 P.2d 477, this Court held that the City of Blackwell could not enact a traffic ordinance in direct conflict with statutory rules established by the Legislature.

In Ex parte Higgs, 97 Okl.Cr. 338, 263 P.2d 752, 756, the rule was followed as announced in Ex parte Gammel, supra, and there the court observed the general rule to be:

"* * * In said cases we observed 'an ordinance passed under' municipal powers 'which conflicts with the general laws of the state, must give way, and, while it may run concurrent with the general laws of the state, it may not run counter thereto.' * * *"

To be sure the Beverage Control Act covers the sale of alcoholic beverage but Ordinance No. 1165 is concerned with the licensing and regulation of private clubs where alcoholic beverages are consumed on the premises.

The City of Norman may not enact regulatory measures contrary to the general laws of the State, enacted by the Legislature. However, the police power granted to the City of Norman by its Charter gave it the right to pass the ordinance in question to protect the public health, safety, morals and general welfare of society. Courts have generally refused to interfere with the legislative discretion exercised by the governing body of a municipality in the adoption of ordinances proper under the police powers.

In Gant et al. v. City of Oklahoma City et al., 289 U.S. 98, 53 S.Ct. 530, 532, 77 L. Ed. 1058, it was said:

"Whether the judgment of the common council of the city in the present case was wise, or whether the requirement will produce hardship in particular instances, are matters with which this court has nothing to do. It is impossible for us to say that the provisions of the ordinance are clearly arbitrary and unreasonable. If there be room for fair debate, this court 'will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question'. * * *"

We conclude that the City of Norman had the authority to enact Ordinance No. 1165.

Second, Ordinance 1165 is challenged as void because it is discriminatory. It does divide private clubs into three classes. Class "A" includes private clubs maintained, supported and controlled by a nationally recognized lodge, fraternal association, as a veterans' organization. Class "B" includes restaurants open to the public, which maintain a private room opening into the restaurant, which room is used as a private club. Class "C" includes all other private clubs as defined in the ordinance.

Section 14 provides that no Class "B" or "C" club shall be operated without constant and complete kitchen facilities. Class "A" clubs are not included in this requirement.

Section 15 provides that no Class "C" and "B" clubs shall be operated unless hot foods are served at all hours while open for business. No such requirements are applied to Class "A."

Section 18 requires as to Class "C" clubs that no application for membership shall be approved until it has been on file for at least one week, and that a list of members shall be kept on the premises of every club but this applies only to Class "C" clubs.

Section 24 provides a license tax which is to be levied on all private clubs. Class "A" clubs shall pay $100 per annum; Class "B" shall pay $300 per annum and Class "C" $600 per annum.

The City of Norman called as a witness its Chief of Police, a man of long experience in law enforcement and his testimony amply sustains the contention of defendant that the distinctions complained of are justified because the cost of maintaining law and order in each class of clubs is certain to vary in respect to the different classes of clubs. We believe that the defendant was justified in making the classifications made and that they are reasonable and not arbitrary. This conclusion is supported by In re Seltenreich, 95 Okl.Cr. 250, 244 P.2d 587, in the eighth paragraph of the syllabus, which is as follows:

"In determining the question of the constitutionality of a municipal ordinance, and as to whether it is in violation of the 'equal protection' clause

of the Fourteenth Amendment to the Constitution of the United States, the following fundamental principles are important:

"(a) The equal protection clause of the Fourteenth Amendment does not take from the municipality the power to classify in the adoption of police laws, but admits to the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely · arbitrary.

"(b) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"(c) When the classification in an ordinance is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the ordinance was enacted must be assumed."

The plaintiff did not dispute the evidence offered by the defendant.

█ The third contention of plaintiff is that the ordinance in question invades the rights of the owners of private property to contract in regard thereto. Section 12 of the ordinance provides that no private club shall have a lease agreement with any other person or firm providing for a rental based upon a percentage of profit of the club, but that the rental agreement shall be on a fixed basis without relation to any income or profit to the club. Defendant agrees that the governmental power to limit liberty of contract must rest on some reasonable basis but contends that the limitation on the right of contract here involved is not unreasonable.

Defendant cites Ex parte Houston, 93 Okl.Cr. 26, 224 P.2d 281, 284, where, in the eleventh paragraph of the syllabus, it is said:

"The police power is very broad and comprehensive and is exercised to promote the health, comfort, safety and welfare of society. Under it, conduct of an individual, and the use of · property may be regulated so as to interfere to some extent with the freedom of one and the enjoyment of the other. Applying this principle to Ordinance No. 6331, of the City of Oklahoma City, and to the facts developed, held: that said ordinance does not constitute an improper exercise of the police power of said City."

If private clubs are permitted to have a lease with rental based upon a percentage of the profits, then the club would have a silent partner not subject to regulation and inspection by the city or some undesirable person who is not entitled to operate the club. The president of plaintiff testified that the premises occupied by the plaintiff club has no silent partner or lease contract in violation of Section 12. This section therefore casts no burden upon this plaintiff. To us this is a reasonable regulation and is constitutional.

█ For its fourth proposition plaintiff objects to the ordinance in question because of the provision in Section 13 which allegedly permits premises to be searched without a search warrant. Defendant cites 63 O.S.1951 § 343, which provides for the inspection by the Board of Health of public hotels, rooming houses, apartment houses and public restaurants as defined in that Act. Some of these are protected from unlawful search and seizure because of their nature.

It should be kept in mind that in passing the ordinance complained of the City of Norman is undertaking to regulate the operation of private clubs which permit drinking of intoxicating liquor on the premises, all under its police power to preserve the peace and welfare of the community. The United States Constitution contains a similar prohibition against unreasonable searches and seizures, but such prohibitions are

not absolute, and it is only unreasonable searches that are prohibited. The public health, welfare and safety are of sufficient importance to justify inspections by peace officers to insure that the law is being observed.

Experience has taught the law enforcement officers that places where intoxicating liquor is drunk in considerable quantities demand a certain amount of policing.

It is quite necessary that the right to reasonable search exist where there are regulations having to do with the dispensing of intoxicants. Private clubs were placed in three categories by the ordinance. Supervision and inspection are not only reasonable but are mandatory for the proper and fair handling of such installations.

Authorities appear to hold both ways where licenses are granted to carry on an activity. In 79 C.J.S. Searches and Seizures § 6, in the paragraph on licenses on p. 785, the following statement is made:

"* * * It has been held that a grant of a license or privilege may be conditioned on consent to searches and seizures or a waiver of the right to be free from searches and seizures, but this doctrine has also been denied; and statutes permitting inspections by game or conservation officers of the persons, boats, vehicles, etc., of persons having fishing or hunting licenses have been held valid and have also been held invalid."

We think the right to inspect and investigate the operations of private clubs by proper authorities is a clear legal right and violates neither the State nor the Federal Constitutions. The decision of our Court of Criminal Appeals in Harrell v. State of Oklahoma, Okl., 359 P.2d 610, makes the right to inspect and supervise imperative for the proper administration of the pertinent laws on the subject before us. It must be remembered that the constitutional guaranties do not forbid reasonable searches and seizures but forbid only the unreasonable. What constitutes a reasonable or unreasonable search and seizure in any particular case is purely a judicial question. Branson v. State, Okl.Cr., 270 P.2d 362.

As to plaintiff's fifth and last contention, which is that if any portion of the ordinance is void, the entire ordinance is void, there is no merit because in this case we have found no provision of the ordinance unconstitutional and void.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., and WELCH, JOHNSON and BERRY, JJ., concur.

BLACKBIRD, V. C. J., and JACKSON and IRWIN, JJ., concur in part; dissent in part.

IRWIN, Justice (dissenting in part).

I am unable to concur in that part of the opinion which relates to Jack's Supper Club, Ltd.'s, contention that the ordinance in question authorizes private clubs to be searched without a search warrant. In my judgment, the question of search is not involved as the ordinance complained of neither authorizes nor does it attempt to authorize a search without a warrant. Section 13 of the ordinance provides for, "The right of entry and inspection * *", and nothing more.

The production, sale and consumption of alcoholic beverages have been a matter of governmental surveillance and the ordinance involved regulates private clubs which permit the consumption of alcoholic beverages. It was enacted for the preservation of the public health, peace and safety.

A private club is operated for the benefit and profit of the club and the fraternal and social benefits, if any, of the members are incidental. And it could not be seriously contended that a private club which permits the consumption of alcoholic beverages is necessarily conducive to either the health, morals, peace, safety or general welfare of the general public.

Municipalities, in the exercise of proper police powers, may enact ordinances to preserve the public health, peace and safety of the public, and an inspection ordinance enacted for such purpose of ascertaining if the public health, peace and safety of the public is being preserved has the presumption of being valid. In my judgment, an ordinance requiring a licensee to submit to an inspection to ascertain if the public health, peace and safety of the people is preserved and the law complied with does not contravene the letter or the intent of the Fourteenth Amendment of the Federal Constitution or Article II, Sec. 30, of the Oklahoma Constitution which prohibit unreasonable search and seizures.

Plaintiff in error's contention is that in order to obtain a license it is necessary that it consent to an unreasonable search and seizure. The fact that an unreasonable search and seizure may be made by the municipality, acting by and through its authorized officers or agents, in exercising its authority to enter and inspect the premises, should not and could not form a basis for holding the ordinance unconstitutional. In my judgment, the plaintiff, in consenting to the municipalities right to enter and inspect, does not waive his constitutional rights which protect it against unreasonable search and seizure. If and when an unreasonable search and seizure occurs and the legality thereof is questioned, such will then present a judicial question to be determined in view of all the facts and circumstances under which the search or seizure was made. See Branson v. State, Okl., 270 P.2d 362.

I therefore respectfully dissent to that portion of the opinion relating to the right of entry and inspection, as the same has been considered and promulgated by a majority of my associates. However, in my judgment, the ordinance is valid and the same should be upheld by this Court.

I am authorized to state that BLACK-BIRD, V. C. J., and JACKSON, J., concur in the views herein expressed.